**Gary WATKINS, Joy Lee Watkins and Opal Leeila Kilburn, Plaintiffs–Respondents,**

v.

**Kent JOHNSON, d/b/a Johnson's Flying Service, Defendant–Appellant.**

**No. WD 31423.**

Missouri Court of Appeals, Western District.

Oct. 1, 1980.

James T. Holcomb of Holcomb & Roberts, Trenton, for defendant–appellant.

Jack Peace of Stockard, Andereck, Hauck, Sharp & Evans, Trenton, for plaintiffs–respondents.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a court–tried action for damages caused by negligent aerial chemical spraying. The court entered judgment for $600.00. The judgment is affirmed.

In his original brief, appellant presented three alleged points of error. He claimed the trial court erred because (1) it found respondents were damaged by his negligent acts, (2) its award of damages was the result of speculation and guesswork and (3) it admitted, over objection, respondents' testimony regarding the damage of two walnut trees.

Pending this appeal, respondents filed a motion for damages for frivolous appeal pursuant to Rule 84.19. This motion was ordered with the case. The motion is hereby overruled.

Points (1) and (3) are no longer part of this appeal, because appellant failed to file a supplemental brief. Appellant was advised that said points were stricken by an order of this court for his failure to comply with Rule 84.04(d) as interpreted by *Thummel v. King*, 570 S.W.2d 679 (Mo.banc 1978). Appellant was given fifteen days leave to comply with the rule and his failure to do so renders said points stricken.

Review of the remainder of this matter is limited by Rule 73.01 as interpreted by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). Review is equitable in nature, being both upon the evidence and the law, see *Tockman v. Shower Doors, Inc.*, 568 S.W.2d 74 (Mo.App.1978). The judgment should be affirmed regardless of the theory upon which it is based insofar as upon the law and evidence, such judgment could have been properly reached upon any reasonable theory, see *Snadon v. Gayer*, 566 S.W.2d 483 (Mo.App.1978). The instant case was tried to the court and the record reveals no request by either party was made for findings of facts or conclusions of law. Such findings and conclusions are not required of the trial court unless requested, see *Skinner v. Henderson*, 556 S.W.2d 730 (Mo.App.1977). When findings and conclusions are not requested, all fact issues are to be considered found in accordance with the result reached by the trial court, see *Marriage of Badalamenti*, 566 S.W.2d 229 (Mo.App.1978). See also *Air Cooling & Energy, Inc. v. Midwestern Construction Co. of Missouri, Inc. et al.*, 602 S.W.2d 926 (Mo.App. 1980).

Appellant was hired to spray pasture land owned by another party, which was in the vicinity of respondents' land. He used a chemical compound referred to as 2–4–D. The spraying was accomplished by using a specially equipped aircraft. 2–4–D is a weed killer and in the instant case, was deployed to improve pasture land.

Evidence existed that 2–4–D could damage and kill walnut trees and broad leaf red clover. High temperatures and humidity would or could affect the rate of evaporation of the chemical into the surrounding atmosphere. The higher the temperature was, the more rapid the evaporation, and the higher the humidity was, the slower the evaporation. The evaporation factor was important relative to the amount or velocity of the wind. The greater the evaporation relative to the increased velocity of the wind results in more vapor in the atmosphere, in turn resulting in the spreading of the chemical over a wider area.

Respondents' witnesses testified to having observed appellant's aircraft during different hours on the date in question. They stated that during different hours on the date in question, the weather was quite hot, somewhere in the "90's", and there was a mild wind blowing in the direction from the sprayed area toward respondents' property.

Respondents further testified that within a few days of the spraying, some 7½ acres of red clover turned yellow and the yield was lessened at harvest. In addition, respondents testified that the leaves on two 30–40 foot walnut trees first turned yellow, then brown, and then ultimately dropped from the trees.

Appellant's evidence refuted the claimed effects of the 2–4–D because of the compound mixture allegedly used. In addition, appellant, who was also the pilot, testified there were no adverse wind conditions and that neither the temperature nor the humidity were such as to produce adverse results.

Turning to appellant's alleged point of error, while not so worded in his brief, this court interprets the claim of error upon the basis there was no substantial or sufficient evidence to support a finding by the trial court that respondents suffered loss of red clover as a result of appellant's spraying activities. When the clover (hay) was harvested, there were maybe half as many bales obtained from the west portion of respondents' yield as obtained from the east portion of their field. (The west portion was the area exposed to the 2–4–D spray.) Respondents traded the red clover (hay) for work performed by others and had there been more clover (hay), respondents could have received an additional 100 hours of work in exchange therefor. There was no evidence on any other possible cause for the claimed reduced production of the clover (hay). The hourly rate of labor exchange was equivalent to $5.00 per hour in the absence of the trading for hay.

Respondents testified to observing the yellowing effect on their red clover on the west portion of their field within a few days after the spraying. In addition, there

was testimony concerning bulldozing costs of $100.00 for the removal of the two walnut trees. Further, one of the respondents' witnesses testified as to the difference in value of the property prior to the spraying as contrasted with the value after spraying and placed that difference at a loss of $1,000.00.

Appellant argues the trial court based its award of damages upon speculation and guesswork. The evidence fails to support this contention. There is no requirement that damages be proven with mathematical certainty, see *Boston Securities, Inc. v. United Bonding Insurance Co.*, 441 F.2d 1302 (8th Cir. 1971). Rather, only reasonable certainty is required, see *Thienes v. Harlin Trust Company*, 499 S.W.2d 223 (Mo.App.1973).

The evidence herein reveals a claim of $1,600 in damages. The trial court, upon listening to the evidence and in being able to observe the demeanor of the witnesses, awarded damages in the sum of $600.00.

In applying the rule in *Murphy v. Carron, supra*, this court finds, upon the entire record herein, that there was substantial evidence to support the judgment entered by the trial court, that the judgment was not against the weight of the evidence, and the trial court did not, by its judgment, erroneously declare the law or erroneously apply the law.

For the foregoing reasons, the judgment of the trial court is in all respects affirmed.

All concur.