**Howard McFADDEN, Public Defender, et al., Appellants,**

v.

**Margaret KELLY, as State Auditor, Respondent.**

**No. WD 38122.**

Missouri Court of Appeals, Western District.

Dec. 23, 1986.

Dale C. Doerhoff, Cook, Vetter & Doerhoff, Jefferson City, for appellants.

William L. Webster, Atty. Gen., B.J. Jones, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The ultimate issue in the appeal is whether the Missouri Auditor, pursuant to an audit of the Public Defender Commission, may subpoena from the Defender affidavits executed by or on behalf of individual defendants which are used by the Defender for determining indigency. The Public Defender Commission and the System, (Public Defender's) is funded by the state, and generally speaking, is a mechanism to provide defense services for those who cannot afford private counsel, who are accused of a felony or misdemeanor, parole violation, or who are guaranteed a lawyer under the Constitution or who have a loss of liberty where law requires counsel. By legislation in 1982 the Public Defender took over from the courts the duty of determining whether applicants seeking a Public Defender were indigent and therefore qualified for the Defender to represent them.

It is the actual application for a Public Defender and the affidavit of indigency of the defendant the Auditor seeks (hereafter referred to as the affidavit). Acting under Section 29.235.2 RSMo 1978, the Auditor issued a subpoena duces tecum to McFadden, the Defender in Cole County for the affidavits of some sixteen criminal defendants who had been represented by his office. The Cole County Public Defender, joined by the Director and the Public Defender Commission filed this action for injunctive relief and quashal of the subpoena as well as a judgment declaring the Auditor may not obtain this information from the Defender's files.

In auditing this state agency the Auditor requested the Affidavits so as to check this sample and determine whether or not persons claiming indigency and receiving the legal defense services of the Defender system were truly not capable of employing private counsel. In this suit the Public Defender resisted production of the affidavits on the basis of a claim of violation of separation of powers, the confidential nature of the material procured in an attorney-client relationship and the subject information went beyond what could be obtained under the constitution and statutory duties of the Auditor. After evidentiary hearing the judge found in favor of the Auditor.

The following constitutional and statutory provisions relating to the Auditor and the Public Defender are now mentioned.

Missouri Constitution, The Auditor, Article IV, § 13 provides a duty to the Auditor to "post audit the accounts of state agencies." Section 29.200, RSMo 1978 spells out the constitutional directive by requiring the Auditor "every two years, and when he deems it necessary, proper or expedient, the state auditor shall examine and post-audit the accounts of all appointive officers of

the state and of institutions supported in whole or in part by the state." Section 29.130 gives the Auditor free access to state offices, "for the inspection of such books, accounts and papers as concern his duties."

Section 29.235, *supra*, states:

1. All audits shall conform to recognized governmental auditing practices.

2. The state auditor * * * may administer oaths and cause to be summoned * * * any person whose testimony is desired or necessary in any examination, and may require the person to produce necessary papers, documents and writings.

## THE PUBLIC DEFENDER

Section 600.019, RSMo Supp.1984 treats the Office of State Public Defender as an independent department of the judicial branch. All further statutory references to Chapter 600 are contained in RSMo Supp.1984.

Run by the Commission, the Public Defender system is to provide defense services in cases enumerated in § 600.042.3 for "eligible persons." Section 600.011(6) and (7), RSMo Supp.1984.

Section 600.086.1 holds a person is considered eligible for representation when it appears "from all the circumstances of the case," including his ability to make bond, his income and the number of persons dependent on him for support "that the person does not have the means ... to obtain counsel in his behalf and is indigent...." Section 600.086.2 gives the Commission rulemaking power as to determining indigency. Section 600.086.3 reads as follows:

The determination of indigency of any person seeking the services of the state public defender system shall be made by the defender or anyone serving under him at any stage of the proceedings and shall be subject to appeal to the court before which the case is pending. Any such person claiming indigency shall file with the court an affidavit which shall contain the factual information required by the commission under rules which may be established by the commission in determining indigency.

The rest of § 600.086 gives the Public Defender the ability to inquire into the financial status of persons seeking its services, on whom is the burden to convince the defender or the court of their eligibility.

Section 600.090 allows the Public Defender to make a determination of requiring a client, if financially able to make a cash contribution towards the cost the representation generates. Procedures are put in place for collecting such sums from defendants the Defender serves.

Section 600.091 reads as follows:

The files maintained by the state public defender office which relate to the handling of any case shall be considered confidential and shall not be open to inspection by any person unless authorized by law, court order, the commission, or the director. Nothing in this section shall be construed to prohibit access by the state auditor to those records of the state public defender system needed by the state auditor to carry out the duties of his office.

The evidence at trial included the administrative rules on determination of indigency as promulgated by the Public Defender. In summary, and very generally, those guidelines as to the determination of eligibility are as follows: A person unemployed and receiving public assistance or unemployment compensation is eligible. The income scale for eligibility is a net of $100 per week plus $20 for the first two dependents and $10 additional dependents. Debts over $200 and living expenses are to be considered, as well as existence of certain assets. If a person has a 20% equity in a home or over $500 in cash there is a presumption the person is not indigent. A defendant who makes a bond of $5000 is also presumed ineligible.

Also introduced in evidence was the Affidavit in question. Someone in the Public Defender's office takes the information as to land, debts, assets, income, expenses and dependents from the applicant. The appli-

cant then declares this information to be true and is told making a false statement on his affidavit is a crime and is given to understand by the Defender or designee may contact employers, banks and other institutions to verify the information. It is on the basis of the information in the Affidavit that the Public Defender makes a determination as to indigency and therefore eligibility. In bold face type the applicant is advised, "you may be liable to the state for the cost of the services and expenses of the lawyer who handles your case if you are or will be able to pay all or any part of such costs."

The Public Defender would agree to supply requested Affidavits, but mask the names of the applicants. The Auditor wants identifiable affidavits for the following reasons: 1) since the legislature provides money to provide counsel for indigent persons, the first objective is to see if the money was spent according to statute; 2) to make sure the rules promulgated by the Public Defender are being complied with; 3) to see whether collections are being made of those who are found to be able pay; 4) to find out whether in circuits using only appointed counsel it might be more economical to use the Public Defender; and 5) to find if new ways of screening are available to better determination.

The judgment for the Auditor was for the following reasons: 1) the affidavits were necessary for the performance of an audit of the Public Defender System; 2) compliance with the subpoena would not violate the separation of powers doctrine under Mo.Const. Art. IV, § 1; 3) § 600.091 provides a basis for access, there being no attorney-client privilege involved; and 4) under § 600.086.3 the Affidavits are required to be filed with the court, are therefore public record and should be accessible by the auditor.

■ In this court tried case the judgment is to be affirmed if the result may be reached on any reasonable theory. *Worlledge v. City of Greenwood,* 627 S.W.2d 328, 331 (Mo.App.1982); *Watkins v.*

*Johnson,* 606 S.W.2d 493, 495 (Mo.App. 1980).

■ For the last conclusion (4) given by the trial court the judgment may be sustained. *Oldham's Farm Sausage Co. v. Salco,* 633 S.W.2d 177, 180 (Mo.App.1982). Section 600.086.3 *supra,* is read to require the Public Defender to determine indigency, and if not favorable to the applicant the decision appealed to the court, plus any person claiming to be indigent shall file the affidavit in question with the court. Because of the subpoena issued here, it must be assumed the court files did not contain the Affidavits but that they remained in the Public Defender's files. Nevertheless, the statute must be understood to mean any affidavit of indigency must be filed with the court—it makes no difference whether the Defender makes the determination of indigency or whether the court later rules. Since the Affidavits should be in the court file and a public record, it is unnecessary to evaluate the remainder of the Public Defender's points on appeal, except to note the Public Defender's contention on appeal of the Auditor going beyond a statutory post audit function as defined in *Director of Revenue v. State Auditor,* 511 S.W.2d 779 (Mo.1974). Both parties here acknowledge *Director v. Auditor,* is controlling as to the definition of "post-audit" as contained in the constitution and Chapter 29 of the statutes pertaining to the audit functions to be performed by the Auditor. In this opinion the court does not pass on whether any of the five reasons given by the Auditor for use of the affidavits go beyond her powers. All the court is doing now is affirming the trial court's determination the affidavits are public record and susceptible to subpoena by the Missouri State Auditor. Any question as to the eventual use of the affidavits or of any audit by the Auditor, remains for another day.

The judgment is affirmed.

All concur.