**Mary H. CONCANNON,**
**Plaintiff–Respondent,**

v.

**HANLEY DEVELOPMENT CORP., et al., Defendants–Appellants.**

**No. 55075.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 18, 1989.

**184**

William J. Travis, St. Louis, Anthony F. Vaiana, Clayton, Melinda Ann Friedman, Brent Winfield Baldwin, St. Louis, for defendants-appellants.

Randy R. Mariani, St. Louis, for plaintiff-respondent.

GARY M. GAERTNER, Judge.

In this consolidated appeal, appellants, Hanley Condominium Association, Hanley Development Corporation and Fox & Cole Consulting Engineers, appeal the trial court's order in favor of respondent, Mary H. Concannon. The trial court awarded respondent $6,000 in compensatory damages and also injunctive relief, to be detailed later in this opinion, in respondent's action against appellants wherein she chal-

lenged the method utilized by appellants to dispose of surface water runoff from a condominium complex built near her house. On appeal, appellants raise essentially three issues. Appellants argue there was no substantial evidence they violated Missouri's modified common enemy doctrine regulating the disposition of surface water runoff. As well, appellant Fox & Cole Consulting Engineers (Fox & Cole) maintains the grant of injunctive relief was improper. Finally, appellant Hanley Development Corporation asserts it should not have to share certain costs with Fox & Cole relating to the injunctive relief. We affirm in part and remand in part.

The evidence shows that respondent purchased her house in University City, Missouri in 1970. During the period between 1970 and 1979 she experienced no water problems; there was no ponding, flooding or standing water in her yard after rainfalls and water did not seep into her basement. In 1979, Hanley Development Corporation began to develop a parcel of property southeast of respondent's house. The two properties do not share a common boundary; however the properties do meet at their corners. Respondent's property now receives approximately two to three times more water in volume and at an increased rate than before the development. A considerable portion of her entire backyard is covered by water for several days after every rainfall of any significance. As a result of the recurring ponding and flooding, respondent has had numerous shrubs and several large trees die; she has experienced considerable soil erosion and an increase in the number of mosquitoes present in her backyard. As well, water now seeps into her basement.

Prior to the development of the condominiums, surface water from the property on which they were built generally drained across that property in a thin, diffused sheet flow. The runoff would flow across the entire width of the property and onto property other than respondent's property. Respondent specifically testified that she never saw water flowing across her property prior to the development. In developing the condominiums Hanley Development Corporation retained the services of Fox & Cole. In conjunction with Fox & Cole, the developers altered the natural topography of the site for the planned condominiums so as to stop the sheet flow of water across the property; the land was regraded, and curbs and embankments were constructed in order to assure that all the surface runoff is channelled into a detention basin in the corner of the property touching respondent's property. After being collected in the detention basin, the water is then discharged in a concentrated stream through an eight inch pipe directly onto respondent's property, which property is predominately flat and contains no natural drainway through it.

Respondent sued Hanley Development Corporation and Hanley Condominium Association, each of which then impleaded Fox & Cole as a third party defendant. The trial court, sitting without a jury, on November 27, 1987, awarded respondent $6,000 in damages, to be paid entirely by third party defendant Fox & Cole. The court further ordered the parties to mutually select an engineering firm in order to evaluate the disposal of surface water from the condominium project. The order provided that the court would "retain jurisdiction ... for the purpose of accepting or rejecting the report of the engineering firm selected by the parties and to make further orders as may be necessary and proper to provide for the disposal of the surface water from the Hanley Condominium project." Lenz Engineering, Inc. was selected by the parties and submitted two reports to the trial court. On June 14, 1988, the court ordered appellants to "grade the Concannon backyard so as to lessen the possibilities of ponding." The court further held that it was retaining jurisdiction "for a period of six (6) months to and including December 15, 1988, after which time the court will review the situation with the parties to determine any further orders."

■ Before reviewing the merits of this case, we must determine whether the trial court's order is final such that it may be appealed. A judgment is final and appealable if it disposes of all the parties and all

the issues in the case and leaves nothing for future determination. *William v. Walker*, 734 S.W.2d 283, 286 (Mo.App., E.D.1987). However, this rule is tempered by the instruction that what is or is not a final judgment "depends upon the circumstances of each individual case." *Clasen v. Moore Brothers Realty Co.*, 413 S.W.2d 592, 597 (Mo.App., E.D.1967). So long as the judgment settles the equities and duties of the parties it is nonetheless final because there remains the necessity for some future action or direction by the court in execution of the judgment. *Id.; See also Thompson v. Hodge*, 348 S.W.2d 11, 13 (Mo.App., S.D.1961). Thus, the possibility of a conditional, future order does not prevent the judgment from being deemed final. In *Clasen*, the trial court issued a declaratory judgment as to the parties' rights under a lease, and retained jurisdiction to order a possible accounting in the event the tenant should fail to pay the rent owed. In *Thompson*, the court set forth the following standard for determining the finality of judgments:

> [I]f ... the court fully determines the issues in accordance with the pleadings, even though there may be incidental or supplementary issues yet to be determined in order to obtain full enforcement, and if the judgment purports to operate *in praesenti* to the extent of determination of the issues raised by the pleadings, then the judgment should be considered as "final" to the extent of adjudging the merits....

*Id.* at 14. We do not believe that new Rule 74.01 alters the above mode of analysis as that rule is addressed to the situation where not all the claims, rights and liabilities of the parties have been adjudicated. In the present case, the claims, rights and liabilities of all the parties have been adjudicated. For, respondent petitioned for both damages at law and equitable relief, an injunction. The original order disposes of the damages claim, as well as the claim against the third party defendant. The second order, enjoining appellants to grade respondent's property, adjudicates respondent's request for equitable relief. A contrary result, mandating that whenever an injunction is issued the trial court would be permitted to retain jurisdiction for the duration of the injunctive period, would leave the trial court's order immune from appellate review. Further, the judgment at issue in the case before us specifically states that the trial court is retaining jurisdiction to and including December 15, 1988, and that date has now passed. We note that all the parties to this action seek a review of the merits.

In considering the merits, we must initially recognize the appropriate standard of review. The trial court's judgment will be sustained if there is substantial evidence to support it, it is not against the weight of the evidence, and it neither erroneously declares or applies the law. *Wojtkowski v. Shelter Insurance Companies*, 702 S.W.2d 74, 76 (Mo. banc 1985). The judgment will be affirmed unless there is no reasonable theory on which to sustain it. *Illinois State Bank v. Yates*, 678 S.W.2d 819, 823 (Mo.App., E.D.1984). And, where as in the case before this court, no findings of fact were requested of or made by the trial court, we will deem all facts in accordance with the results reached, accepting as true all evidence and permissible inferences favorable to the trial court. *Stratton v. Stratton*, 694 S.W.2d 510, 512 (Mo.App., E.D.1985). Accordingly, where testimony is in conflict we will accept that testimony which supports the prevailing party. *Id.*

■ In their first claim of error, appellants assert the trial court erred in ruling they violated Missouri law regulating the disposition of surface water runoff. Missouri adheres to the "modified common enemy" doctrine regarding the disposition of surface water. The doctrine allows lower, or servient, property owners "considerable freedom in blocking the flow of surface water onto their land" but "places substantial restrictions on the rights of ... upper [land] owners who seek to cast surface waters onto lower lying properties." *Looney v. Hindman*, 649 S.W.2d 207, 211 (Mo. banc 1983). The court in *Looney* outlined three situations which will occasion liability for the landowner who casts surface water onto lower lying property: (1) The collec-

tion of surface water into an artificial channel or the volume and discharge of it in increased and destructive quantities upon the servient property to its damages; (2) the draining off of surface waters in such a manner as to exceed the natural capacity of the drainways; and (3) the discharge of surface waters onto adjacent lands to which it would not naturally drain. *Id.* at 211.

Liability in this case was established by substantial evidence under both the first and second situations outlined by the decision in *Looney.* As to appellants' collection of surface water into an artificial channel or the volume and discharge of it in increased and destructive quantities upon respondent's property to its damage, the following evidence was presented: In developing the condominiums, the natural topography of the land was altered so that all surface water would be collected in an artificially created detention basin, where the water was discharged in a concentrated stream from a pipe extending from the basin onto the ground at the corner of respondent's property abutting the condominium property. Consequently, according to respondent's expert testimony, respondent's property receives two to three times as much water as it previously received; even appellants' expert witness conceded the property receives an increased volume and rate of water. The destructive nature of this increased volume and rate of water on respondent's property was fully detailed previously in this opinion. As to the draining off of surface waters in such a manner as to exceed the natural capacity of any drainway, there was expert testimony that the discharge from the development's detention basin is not being discharged into a natural drainway and that no such drainway exists on respondent's property.

The decisions in *Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d 593 (Mo. banc 1974) and *Peters v. Shull,* 379 S.W.2d 837 (Mo.App., W.D.1964), support the trial court's judgment. In *Peters,* the appellate court upheld the trial court's ruling that landowners were liable when they regraded their property and altered the natural surface drainage so as to collect and discharge

it in a concentrated flow onto an adjoining property where there was no natural drainway, causing substantial damage to that property. *Id.* at 841. Likewise, in *Hawkins,* the Missouri Supreme Court sustained the trial court's ruling that the railroad artificially changed the direction of the flow of surface water on its property thereby diverting it in increased amounts upon the servient estate on which there was no natural drainway. *Id.* at 600.

Respondent's petition enunciated three theories on which it was basing liability on the part of Hanley Development Corporation and Hanley Condominium Association: negligence, trespass and nuisance. While this court observes that the trial court's judgment must be affirmed if there is any reasonable basis to sustain it, *Illinois State Bank v. Yates,* 678 S.W.2d at 819, we find appellants liable under each theory pled. *See Skaggs v. City of Cape Girardeau,* 472 S.W.2d 870 at 875 (Mo.App.1971). (That a landowner who exceeds the natural capacity of a drainway is negligent, such holding assuming contrary to the factor before us, that a natural drainway even exists); *Hawkins,* 514 S.W.2d at 600 (A railroad was liable under trespass when it artificially collected and diverted surface water onto a subservient property in great quantities to the property's damages); and *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 881 (Mo. banc 1985) (Liability based on nuisance may be premised upon a continuing known invasion of water.) This point is denied.

■ Appellant Fox & Cole claims the trial court erred in entering a mandatory injunction ordering appellants to "grade" respondent's yard. (No appellant argues that the award of compensatory damages was excessive, assuming liability is upheld. In any event, such a position would find no support in the evidence or in the case law establishing the proper measure of damages. *See Rebel v. Big Tarkio Drainage District,* 602 S.W.2d 787, 793 (Mo.App., W.D.1980).) As to the injunction, a trial court is vested with "broad discretionary power to shape and fashion the relief" it

grants taking into account the "particular facts, circumstances and equities of the case...." *Reproductive Health Services, Inc. v. Lee,* 660 S.W.2d 330, 335 (Mo.App., E.D.1983). However, a trial court must nonetheless comply with Supreme Court Rule 92.02(d). Rule 92.02(d) provides:

*Form and Scope of Injunction or Temporary Restraining Order.* Every order granting an injunction and every retraining order *shall set forth reasons for its issuance; shall be specific in terms; shall describe in reasonable detail,* and not by reference to the petition or other document, *the act or acts sought to be restrained;* and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise. [emphasis added]

The injunction in the present case merely states, "The parties are ordered to grade the Concannon backyard so as to lessen the possibilities of ponding." This language apparently lacks compliance with Rule 92.-02(d), and is therefore set aside. The trial court shall enter a new order pursuant with the requirements of Rule 92.02(d).

■ Finally, appellant Hanley Development Corporation claims the trial court erred in ordering it to share with Fox & Cole the cost of the "Lenz reports" and the cost of regrading respondent's property in accordance with its June 14, 1988, order. Appellant's argument appears to be that since the trial court determined Hanley Development Corporation was to be indemnified by Fox & Cole as to damages, "it was logically inconsistent for the Court to the hold Developer responsible" for the above recited costs. The claim of error is technically valid and correct. Here, however, when Fox & Cole will indemnify Hanley Development Corporation as to its damages, any costs expended by Hanley Development Corporation would be reimbursed by Fox & Cole. Thus, the end result will be the same.

The judgment of the trial court is affirmed in part and remanded in part.

GRIMM, P.J., and KAROHL, J., concur.