FARMER'S MUTUAL FIRE INSUR-
ANCE CO., Plaintiff–Respondent,

v.

Wallace FARMER and Alice Farmer,
Defendants–Appellants.

No. 16578.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 7, 1990.

Dan K. Purdy, Osceola, for defendants-
appellants.

J.D. Baker, Baker & Dull, Osceola, for plaintiff-respondent.

PARRISH, Judge.

Respondent (plaintiff in the trial court) brought this action seeking, in Count I, an injunction to require appellants (defendants in the trial court) to maintain the roof on a building "in such good repair as to prevent any future leakage of rainwater from the building of the Defendants into the building of the Plaintiffs [sic]." [1] In Count II plaintiff sought money damages for harm to plaintiff's building allegedly caused by water that entered the building as a result of leaks in the roof of defendants' adjoining building. The case was tried to the court without a jury in accordance with Rule 73.01. The trial court found for plaintiff on both counts. It enjoined defendants, in Count I, "from allowing the present condition of water flowing from their structure into the interior of plaintiff's building to persist," and ordered defendants "to take remedial action to stop the water flowing from their structure into the interior of plaintiff's building." It further stated, "[t]he Court does not order defendants to repair the roof on their structure for they are entitled to exercise other remedies that will terminate the offending condition." The trial court awarded judgment to plaintiff, in Count II, for damages in the amount of $5,000. Defendants appeal. This court affirms.

No request was made to the trial court for written findings of fact and conclusions of law. The trial judge did, however, gratuitously include certain findings, "for purposes of clarity," in the judgment that was entered. Defendants, by this appeal, do not assign error to any of those findings.[2] Thus, the fact issues upon which no specific findings were made are to be considered in accordance with the result reached by the trial court. *Watkins v. Johnson*, 606 S.W.2d 493, 495 (Mo.App. 1980). The review by this court is undertaken in accordance with the requirements of Rule 73.01(c) as interpreted by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).[3] If the judgment of the trial court could have been properly reached upon any reasonable theory, insofar as upon the law and evidence, it will be affirmed. *Watkins v. Johnson, supra*, citing *Snadon v. Gayer*, 566 S.W.2d 483 (Mo.App.1978).

Plaintiff's and defendants' buildings are located in Osceola, Missouri. Plaintiff's building is attached to and shares a common party wall with defendants' building. Both buildings were previously owned by one person, T. Bryant Johnson. Johnson sold the building now owned by plaintiff to plaintiff in 1969. Johnson sold the building now owned by defendants (known as "the Courier Building") to Norman and Natalie Carlton in 1973. The Carltons subsequently sold the building to William and Marilyn Farmer, defendants' son and daughter-in-law, from whom defendants acquired title. In his conveyance to plaintiff, Johnson reserved an easement across the roof of plaintiff's building for water drainage.

The roofs of both buildings are constructed so that water from the roof of each drains in a southerly direction. Water from the Courier Building drains across its roof, onto plaintiff's building, across plaintiff's roof, onto the ground.

In 1983 plaintiff experienced problems with water leaking into its building. In an effort to stop the water leakages, plaintiff had a portion of the roof on its building

---

1. References to the parties will be by their designations before the trial court, i.e., respondent shall be referred to as plaintiff and appellants as defendants.

2. As announced in *Graves v. Stewart*, 642 S.W.2d 649, 651 (Mo. banc 1982), "when no request is made of the court in a court-tried case to make specific findings of fact or conclusions of law and they are voluntarily given, such findings and conclusions do form a proper basis for assigning error...."

3. *Murphy v. Carron*, at p. 32, construes the requirements of Rule 73.01 to be "that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

replaced. After the new part of the roof was in place, water leaks continued. For the most part, the leaks came from the common party wall shared by the two buildings. The leaks occurred each time it rained. Plaintiff concluded that water was leaking through the roof of the Courier Building, accumulating in the common party wall, passing through that wall, and entering its building below the roof line.

■ For their first point on appeal, defendants claim that the judgment of the trial court is not supported by the evidence and is based solely upon speculation and conjecture. The part of the findings of the trial court about which defendants complain by their first point on appeal is the determination by the trial court that the water that entered plaintiff's building did so by coming through the common party wall. In considering defendants' first point, this court recognizes that the trial court observed the witnesses who presented testimony; that it was afforded the opportunity to assess their credibility and to resolve conflicting evidence. *Citizens State Bank of Marshfield v. Friendly Ford, Inc.*, 686 S.W.2d 565, 567 (Mo.App. 1985). As required by Rule 73.01(c)(2), "[d]ue regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses."

Plaintiff's evidence included testimony of Charles Sheldon, George Baumgardner and Earl Hyke. Charles Sheldon is secretary of the plaintiff corporation. George Baumgardner and Earl Hyke are building contractors.

Charles Sheldon testified that he had observed water come into plaintiff's building through the party wall. George Baumgardner testified that he installed a new roof on plaintiff's building and that it was installed in such a manner that water could not run down the party wall on the side next to plaintiff's building. He testified, however, that after the new roof was installed, water continued coming into plaintiff's building. He inspected the building after the new roof was installed. His inspection disclosed that the roof on the adjoining building, defendants' building, had

deteriorated so that water drained through the lower portion of defendants' roof into the party wall and flowed into plaintiff's building.

Earl Hyke testified that he had inspected the roofs of the buildings and had observed spots that were rusted through the roof on defendants' building. He testified that he located places in the common party wall that showed moisture. Based upon his inspection, Hyke stated the opinion that the water that leaked into plaintiff's building came from the leaks in the roof on defendants' building; that if defendants' building did not leak, plaintiff's building would not leak.

In order to conclude in this case—it being a court-tried case—that the judgment of the trial court is against the weight of the evidence, this court must entertain a firm belief that the judgment is wrong. *Citizens State Bank of Marshfield · v. Friendly Ford, Inc., supra; Commerce Bank of Poplar Bluff v. Bulger*, 614 S.W.2d 768, 769 (Mo.App.1981). Recognizing that a trial court may believe all, part or none of the testimony of any witness, this court does not entertain such a belief. *In the Estate of Graves*, 684 S.W.2d 925, 926 (Mo.App.1985); *Commerce Bank of Poplar Bluff v. Bulger, supra*. The trial court's determination of the facts about which defendants complain in their first point on appeal is supported by substantial evidence and is not against the weight of the evidence. Defendants' first point is denied.

■ For their second point on appeal, defendants state that the trial court erred "in finding that there was a deviation from the easement granted to defendant's [sic] predecessors in title, to permit water to pass over the roof of plaintiff's building...." From the discussion of that point in defendants' brief, it appears that the gist of defendants' complaint is based upon the fact that defendants have an easement "for water drainage across the roof of [plaintiff's building]." Defendants assert that to have found for plaintiff, the trial court had to conclude that the water that entered plaintiff's building was the result of a devi-

ation from the terms of the easement which permits water to drain from the roof of the Courier Building across the roof of plaintiff's building and that such a finding is erroneous. On the other hand, plaintiff asserts that the easement that permits defendants to drain water from the roof of defendants' building to the roof of plaintiff's building does not give defendants the right to permit water to drain through the roof of defendants' building into interior walls through which the water enters plaintiff's building and, therefore, the trial court found correctly.

Both plaintiff and defendants go to considerable lengths to argue whether there has been a trespass by reason of the water from defendants' building entering plaintiff's building. That discussion is unnecessary. Plaintiff pleaded and proved, to the satisfaction of the trial court, that defendants maintained (or failed to maintain) their building so that water leaked through its roof, accumulated within the common party wall shared by plaintiff's building and defendants' building, and leaked through that common party wall into the interior of plaintiff's building. Plaintiff pleaded and proved that its building was damaged and will continue to be subjected to damage as a result of that leakage. Plaintiff's complaint is that defendants' wrongful use of their property—the Courier Building—has unreasonably interfered with plaintiff's use and enjoyment of its building. The parties have used the word "trespass" in arguing the merits of their respective positions; however, trespass is not the appropriate basis for recovery by plaintiff in this case. The facts in dispute present an issue of private nuisance and, in fact, that is the action that the parties have tried notwithstanding their failure to designate it as such.

"[T]he character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action by the pleader...." *McClellan v. Highland Sales & Investment Co.*, 426 S.W.2d 74, 77 (Mo.1967), *quoting from State v. Consolidated School Dist. No. 4 of Iron County, Mo.*, 417 S.W.2d 657, 659 (Mo. banc 1967). "The case is whatever the pleadings and the facts make it, regardless of what name plaintiff gave it." *W.A. Ross Const. Co. v. Chiles*, 130 S.W.2d 524, 528 (Mo.1939). *See also J.R. Watkins Co. v. Hubbard*, 343 S.W.2d 189, 195 (Mo.App.1961).

A detailed and comprehensive discussion of the nature of private nuisance is set out in *Fletcher v. City of Independence*, 708 S.W.2d 158, 166–67 (Mo.App.1986). In part, it states:

An action for private nuisance rests on tort liability. *Merrill v. City of St. Louis*, 83 Mo. 244, 255 (1884). The gist of the action is the unreasonable interference with the use and enjoyment of land. *Rebel v. Big Tarkio Drainage District of Holt City*, 602 S.W.2d 787, 791[7–10] (Mo.App.1980). Nuisance describes an effect, not a cause of tort liability, so that conduct antecedent to the interference may not be relevant to remedy. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 880[1, 2] (Mo. banc 1985). The law of nuisance acknowledges and accommodates two rights in conflict: the right of a property owner to control and use land for personal benefit and interest, and the right of the public and adjoining land owners to prevent an unreasonable use which substantially impairs their peaceful enjoyment of land. *Clinic & Hospital, Inc. v. McConnell*, 241 Mo.App. 223, 236 S.W.2d 384, 390[3–6] (Mo.App.1951).

. . . . .

The fact, in this case, that defendants had an easement to drain water from their roof onto and across the roof of plaintiff did not give them the right to control and use their property so as to cause water to accumulate in the common party wall shared by defendants' building and plaintiff's building and to discharge that water through that wall into plaintiff's building, thereby damaging plaintiff's property on an ongoing and continuous basis. Defendants' actions, in so doing, constitute an unreasonable use and control of their land that substantially impairs plaintiff's peaceful enjoyment and use of its adjoining land.

*Id.* It matters not whether defendants' actions were intentional or negligent. *Id.* In either event, a private nuisance resulted for which defendants are liable. *Id.* Defendants' second point is denied.

By their third point defendants assert that they had no duty to replace or repair their premises to protect plaintiff's premises. In support of this point, defendants again speak in terms of theory of recovery asserting that they committed no trespasses and are, therefore, not liable to plaintiff. However, one of the very cases that defendants cite, *Bell v. Alzey Realty Co.*, 163 Mo.App. 361, 143 S.W. 859 (1912), is persuasive as a basis for upholding the decision of the trial court. *Bell* was an action for negligence involving a dispute over the manner in which a defendant maintained a gutter on its property. The defendant in *Bell* maintained a gutter on a building on its own property in such a manner that water flowed from that gutter onto property of an adjoining owner—the plaintiff in *Bell*—in such a manner that the water was directed against a wall on the adjoining tract. "Because of this condition of the gutter at each recurring rain, the water from the roof of defendant's building was precipitated in large quantities over and against plaintiff's wall so as to soak it, thereby impairing its condition." *Id.* at 364, 143 S.W. at 860. In *Bell*, the court held that the owner of the building with the sagging and disrepaired gutter (the defendant) was negligent and that the neighbor (the plaintiff) could recover damages.

*Bell* is authority for permitting plaintiff to recover in this case. As noted in *Fletcher v. City of Independence, supra*, at 166, either a negligent act or an intentional act may constitute a nuisance. As the acts in *Bell* were actionable in negligence, the strikingly similar acts in this case are actionable as constituting a private nuisance. In this case, as in *Bell*, the part of defendants' building that diverted rainwater was in disrepair. As a result water was thrust against the common party wall so as to cause damage to plaintiff's building. The fact that an easement existed in this case that would have permitted the water, if properly channeled, to flow over and across the adjoining roof is of no effect. That easement did not permit water to be allowed to accumulate inside the common party wall and, thereafter, be leaked into the adjoining building. Defendants' third point is denied.

For their fourth and final point, defendants claim the trial court erred in assessing damages. Defendants argue that the $5,000 which was assessed as damages was not supported by sufficient evidence.

A review of the record discloses substantial evidence upon which the trial court could rely in arriving at the amount of damages it assessed. Damages in the amount of $5,000 is consistent with the testimony of Charles Sheldon, the secretary of plaintiff corporation. Sheldon had prior experience as a licensed real estate agent, as a builder, and as a manager of a business that sold building materials. Sheldon testified that $5,000 would be required to repair the damage caused to plaintiff's building. Sheldon also testified as to the value of the property before and after the damage. The difference was a greater amount than the $5,000 that Sheldon estimated as the cost of repairing the damage. The general rule is that the measure of damages for tortious injury to real property is the difference in the fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount. *Casada v. Hamby Excavating Co.*, 575 S.W.2d 851, 858 (Mo.App.1978). Under the facts of this case, that general rule is the appropriate measure of damages and the award by the trial court is consistent therewith. Defendants' fourth point is denied.

Although not raised on appeal, an aspect of this case remains to be addressed as plain error. To fail to do so would permit an uncertainty to continue with respect to the injunction entered by the trial court and thereby result in manifest injustice. Rule 84.13(c).

In disposing of Count I, the count by which plaintiff sought an injunction, the trial court included as part of its judgment:

Defendants Wallace Farmer and Alice Farmer are enjoined from allowing the present condition of water flowing from their structure into the interior of plaintiff's building to persist, and are hereby ordered to take remedial action to stop the water flowing from their structure into the interior of plaintiff's building. The Court does not order defendants to repair the roof on their structure for they are entitled to exercise other remedies that will terminate the offending condition.

As stated in *Concannon v. Hanley Development Corp.*, 769 S.W.2d 183, 187–88 (Mo.App.1989):

As to the injunction, a trial court is vested with "broad discretionary power to shape and fashion the relief" it grants taking into account the "particular facts, circumstances and equities of the case...." *Reproductive Health Services, Inc. v. Lee*, 660 S.W.2d 330, 335 (Mo. App., E.D.1983). However, a trial court must nonetheless comply with Supreme Court Rule 92.02(d).

Rule 92.02(d) provides:

*Form and Scope of Injunction or Temporary Restraining Order.* Every order granting an injunction and every restraining order *shall set forth reasons for its issuance; shall be specific in terms; shall describe in reasonable detail,* and not by reference to the petition or other document, *the act or acts sought to be restrained;* and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise. [emphasis added]

■ As in *Concannon*, the injunction entered in this case lacks definiteness and, therefore, does not comply with Rule 92.-02(d). An injunction must clearly and specifically describe the acts and things enjoined so as not to be subject to misunderstanding and confusion by those against whom it is directed. *Chemical Fireproof-*

*ing Corp. v. Bronska*, 542 S.W.2d 74, 79 (Mo.App.1976).

The judgment of the trial court is affirmed subject to the trial court entering a new order, consistent with Rule 92.02(d), granting the injunction in count I. The case is remanded.

CROW, P.J., and PREWITT, J., concur.