**In re the MARRIAGE OF Ruth H. RILEY and James R. Riley.**

**Ruth H. RILEY, Appellant,**

v.

**James R. RILEY, Respondent.**

**No. 17438.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 16, 1991.

Motion for Rehearing and Transfer to
Supreme Court Denied
Nov. 7, 1991.

W. Swain Perkins, Thayer, for appellant.

H. Lynn Henry, Henry & Henry, P.C., West Plains, for respondent.

CROW, Judge.

Ruth H. Riley appeals from a decree dissolving her marriage to James R. Riley. Ruth [1] presents three assignments of error. Each concerns a purported separation agreement which the trial court held unenforceable. We recite only the facts necessary to resolve the claims of error.

On July 3, 1990, James filed a document styled "Petition for Dissolution of Marriage" in the Circuit Court of Oregon County. It was signed by him and Ruth. Among other things, it set forth the dates of their marriage and separation, averred differences had arisen making it impossible for them to live together as husband and wife, and pled the marriage was irretrievably broken. One segment read:

"Whereas, the parties are ... deserving [sic] of settling their property rights.

Now, therefore it is here by [sic] mutually agreed that:

. . . .

2. Wife shall have as her sole separate property all of her personal belongings and the following:

A. Real Estate Trait [sic] I and Trait [sic] II as in Exhibit 'A'.

B. 1981 Oldsmobile

C. All household goods and furniture and other personal properties now in possession of wife.

3. Husband shall have as his sole and separate property all of his personal belongings and the following:

A. 1969 Ford Truck

B. All personal belongings now in the possession of the husband."

We henceforth refer to the above document as "the original petition." Attached to it was a page designated "EXHIBIT 'A'" which set forth legal descriptions of two parcels of real estate, identified respectively as "TRACT I" and "TRACT II."

Some 30 days after the original petition was filed, James "came to court to get the marriage dissolved." The record reveals little about that endeavor, but it is clear no decree was entered.

Ruth, with the aid of counsel, subsequently filed an amended petition for dissolution of marriage identifying herself as petitioner and James as respondent. The amended petition pled, among other things:

"... the parties prior hereto, without the assistance of counsel ... executed and filed in this court ... a document referred to as 'Petition for Dissolution of Marriage'; however, the document does not meet the requirements of a valid petition for dissolution of marriage but is in content more in the nature of a separation and property settlement agreement. Petitioner prays that the document be treated as a separation and property settlement agreement...."

In his answer to the amended petition, James admitted the original petition was executed and filed, but denied the rest of the above-quoted averment.

At trial, Ruth testified she and James prepared the original petition together, without guidance from counsel. It was typed by "[s]ome girl." Ruth avowed she understood it was "an agreement to divide up the property." Ruth asked the trial court to approve the "agreement" in the original petition.

On cross-examination, Ruth admitted that when the original petition was signed, she and James were living in a house she owned prior to the marriage. Although he later moved out, she conceded some of the personal property he "brought into the marriage" was still in a shed owned by him, situated on her property. She made no claim to the shed or its contents.

James testified he "had a table and four chairs over there" when the original petition was signed. Asked at trial what items he owned that were still in Ruth's possession, James responded, "Practically every-

1. For convenience, we henceforth refer to the parties by their respective first names.

thing that I had—have got is on her property except what I took down to the auction that she didn't want and sold." James explained he had not gone to get his things because he "did not want to cause any problem."

The trial court received in evidence without objection a list of items identified by James' lawyer as James' nonmarital property. Six of the items—one was the shed—were shown as being in Ruth's possession.

In addition to his nonmarital property, James claimed a marital interest in three items of personal property: a bed, a deep freeze, and a house jack. He testified he was dissatisfied with the "agreement of the division of property" in the original petition because he could not figure out why Ruth "would not list everything."

The decree of dissolution of marriage included this:

"The court further finds that the parties entered into a prose [pro se ?] document ... which was the first document filed in this proceeding by the parties herein. The court finds that said document is not enforceable for the reason that the parties were not in agreement as to the division of property at the time they executed said document."

The decree awarded James the nonmarital property on the list submitted by his lawyer, and also awarded James $129 for his marital interest in the bed, deep freeze and jack in Ruth's possession. Additionally, the decree awarded James a $2,375 interest in the home Ruth owned before the marriage. This award represented alleged improvements James made to the home, enhancing its value.

Ruth's first point relied on reads:

"The trial court erred in finding that the [original petition] was unenforceable for the reason it was not the agreement of the parties as to the division of property because finding that an agreement did not exist was against the weight of the evidence."

Ruth argues the original petition constituted "a written agreement dividing property," and evidence of the agreement was clearly spread upon the record of the trial court. Citing *Peirick v. Peirick*, 641 S.W.2d 195 (Mo.App.1982), and *Markwardt v. Markwardt*, 617 S.W.2d 461 (Mo.App. 1981), Ruth asserts separation agreements spread upon the record are held enforceable unless unconscionable.

The instant case differs from *Peirick*. There, the parties to a dissolution action appeared in court with their respective lawyers and agreed on the record to a complete and specific disposition of their property. The trial court found the testimonial settlement conscionable. Later, the husband tried to renege on it. The Eastern District of this Court held the agreement binding and affirmed a decree disposing of the property in accordance with the agreement.

Similar circumstances existed in *Markwardt*. During trial of a dissolution action, the parties resolved their dispute regarding marital property. The detailed terms of the oral settlement were dictated into the record by the wife's lawyer. The parties stated under oath that they understood and agreed to the terms. The trial court found the agreement conscionable. The wife's lawyer stated he would provide the court a writing memorializing it. The wife thereafter refused to sign the written agreement. The Eastern District of this Court ruled the oral agreement valid and held the trial court did not err in approving it.

In the instant case, no oral agreement was presented at trial. At that time the parties were in dispute, particularly about whether James, because of alleged improvements he made to the home Ruth owned before the marriage, was entitled to an interest in it. If there was a property settlement agreement in the instant case, it had to be the original petition.

■ To be valid, all essential terms of a contract must be sufficiently definite to enable the court to give them an exact meaning. *Minden v. Otis Elevator Co.*, 793 S.W.2d 461, 464[8] (Mo.App.1990); *Marshall v. Edlin*, 690 S.W.2d 477, 480[3] (Mo.App.1985); *Brown v. Childers*, 254 S.W.2d 275, 280 (Mo.App.1953).

■ The original petition stated Ruth would receive her personal belongings, two tracts of real estate, a 1981 Oldsmobile, and all household goods, furniture and other personal property then in her possession. The original petition stated James would receive his personal belongings, a 1969 Ford truck, and all personal belongings then in his possession.

The evidence established that at the time the parties signed the original petition, they were living in the same house. James testified that at that time, his personal property was in the house and "was being used." It is evident neither party had sole possession of the household contents, to the exclusion of the other, when the original petition was signed. Furthermore, the original petition supplied no clue as to whether the term "personal belongings," as used in the provision stating what James was to receive, included items such as the table and chairs about which he testified.

In such circumstances, a judge could not have determined from the original petition which items of undescribed personal property were to be set apart to Ruth as her nonmarital property, which items of undescribed personal property were to be set apart to James as his nonmarital property, and how the marital personal property— the bed, deep freeze and house jack—was to be divided. We hold the trial court did not err in ruling the original petition unenforceable.

■ In the argument under her first point, Ruth asserts the decree is "improper" because it fails to state facts in support of the conclusion that the parties were not in agreement when they executed the original petition. This contention does not appear in the first point. A reviewing court is obliged to determine only those questions stated in the points relied on; issues to which an appellant alludes only in the argument portion of the brief are not presented for review. *Berger v. Huser,* 498 S.W.2d 536, 539[2] (Mo.1973); *Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 325[19] (Mo.App.1991); *Landoll by Landoll v. Dovell,* 779 S.W.2d 621, 627[9] (Mo.App.1989).

■ Furthermore, neither party requested findings on any specified fact issues. Consequently, we regard all fact issues as having been found in accordance with the result reached. Rule 73.01(a)(2), Missouri Rules of Civil Procedure (1991); *Steen v. Colombo,* 799 S.W.2d 169, 173–74[2] (Mo. App.1990); *Farmer's Mutual Fire Insurance Co. v. Farmer,* 795 S.W.2d 104, 105[1] (Mo.App.1990).

Ruth's first point is meritless.

Her second point avers the trial court erred by failing to determine whether the "property division agreement" in the original petition was unconscionable. The point is premised on the assumption that the original petition contained an agreement which could have been enforced if not unconscionable.

In rejecting Ruth's first point, we held the purported agreement unenforceable because the nonmarital and marital personal property each party was to receive could not be ascertained. Therefore, there was no separation agreement for the trial court to find conscionable or unconscionable. Ruth's second point is denied.

Her final point alleges the trial court erred in holding the original petition unenforceable in that the court failed to consider "the economic circumstances of the parties, or other relevant evidence, to find the agreement unconscionable." This point, like the second, is based on the hypothesis that the purported agreement was definite enough to be enforceable. Inasmuch as we have rejected that thesis, the third point necessarily fails.

The decree of dissolution of marriage is affirmed.

PREWITT, P.J., and PARRISH, J., concur.