**In the Interest of J.M., Juvenile.**

**H.M., Appellant,**

v.

**Kenneth M. HENSIEK, Chief, Deputy Juvenile Officer, Respondent.**

**No. 61700.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 26, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 8, 1993.

Mary Ann Weems, Clayton, for appellant.

Nancy L. Sido, Clayton, for respondent.

AHRENS, Presiding Judge.

Father appeals from an order of the St. Louis County Juvenile Court modifying its prior custody order and transferring custody of son, J.M., to a treatment program for sexual offenders. We affirm.

In 1989, J.M. was charged with sodomy and placed under the jurisdiction of the juvenile court and the supervision of a juvenile officer. On August 15, 1990, J.M. was again placed under the jurisdiction of the juvenile court pursuant to § 211.031.-1(3) RSMo (Supp.1989) after he admitted committing sodomy, armed criminal action, felonious restraint, and assault in the third degree. By order of August 28, 1990, and pursuant to § 211.181.3(1) RSMo (Supp. 1992), the court continued jurisdiction over J.M. and placed him in his mother's custody subject to supervision by a juvenile officer. J.M. received inpatient psychiatric hospitalization prior to his discharge to mother's custody on October 31, 1990; after the discharge, J.M. was under the continued care of a psychologist and psychiatrist and continued his participation in group therapy.

In March of 1991, J.M. was detained on charges of sodomy, burglary, and assault in the third degree, which was later amended to sexual abuse in the first degree. On April 25, 1991, the juvenile officer filed a motion to allow prosecution of J.M. under general law, which was taken under advisement. Effective August 1, 1991, the court transferred custody of J.M. to the Evangelical Children's Home.

At father's request, the court conducted a financial hearing to determine the parents' responsibility to reimburse St. Louis County for the cost of J.M.'s care and maintenance. In lieu of any previously-

ordered child support, the court ordered father to pay $670.69 per month for the support of J.M. while he was at the Evangelical Children's Home; mother was not ordered to contribute at that time. After approximately one month, J.M. was discharged from Evangelical because his treatment needs were beyond what the program was designed to provide, and because the information he divulged concerning his sexual problem caused the staff to become fearful for their safety and the safety of the other residents. Thereafter, J.M. was placed in the St. Louis County Juvenile Detention Center while juvenile officers attempted to locate residential placement.

On November 1, 1991, Judge Alphonso Voorhees entered an order transferring custody of J.M. to "Rebound," a private sexual offender treatment program in Colorado. The order required the total cost of $160.00 per day to be borne as follows: St. Louis County, $50.00 per day; father, $100.00 per day; and mother, $10.00 per day. Father was authorized to apply for insurance benefits to be credited toward his assessed costs. On November 15, 1991, father filed a petition for writ of prohibition with this court, asserting that Judge Voorhees exceeded his jurisdiction in entering the order by failing to conduct an evidentiary hearing and failing to make certain determinations and findings. On February 25, 1992, the preliminary order in prohibition was made permanent, and Judge Voorhees' order was set aside.

On February 11, 1992, the juvenile officer filed a motion to modify the court's previous custody orders, pursuant to § 211.251 RSMo (Supp.1992) and Rule 119.-09. An evidentiary hearing on the motion was held March 2, 1992; the court heard the testimony of father, the chief juvenile officer, and a deputy juvenile officer assigned to J.M.'s case in 1990. On March 4, 1992, the court modified the order of August 28, 1990, and ordered the custody of

J.M. transferred to the Rebound treatment program, subject to the continuing supervision of a deputy juvenile officer. The court ordered St. Louis County to pay $160.00 per day for J.M.'s placement in the program, and ordered father and mother to reimburse St. Louis County at the rate of $80.00 and $10.00 per day, respectively, for J.M.'s support and maintenance. Father appeals.

■ Juvenile proceedings and appellate review thereof are in the nature of civil proceedings, and the scope of review is as in court-tried cases. *C.R.K. v. H.J.K.*, 672 S.W.2d 696, 698 (Mo.App.1984). Accordingly, our review of the modification order is limited to a determination of whether there is substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01. We view the facts and reasonable inferences therefrom in the light most favorable to the order. *In Interest of L.W.*, 830 S.W.2d 885, 886 (Mo. App.1991).

■ In point one, father contends the court's modification order is an abuse of discretion and against the weight of the evidence where the court specifically found "that the juvenile's treatment needs are such that no public or private facility within the State of Missouri can meet his treatment needs, and further that the facilities available within the State through the Missouri Division of Family Services and the Missouri Department of Mental Health are not appropriate for the juvenile's special treatment needs as a teenage pedophile." Specifically, father contends there was no expert testimony or substantial evidence adduced to support the finding.[1]

■ On this point, the juvenile court heard evidence from Kenneth Hensiek, the chief juvenile officer of St. Louis County, and Robert Donovan, a deputy juvenile of-

---

1. In his argument, father also contends there was no substantial evidence to support the court's finding that the Rebound program is an "appropriate treatment resource" for J.M. However, father failed to include this contention in his point relied on; accordingly, the issue is not presented for our review. *In re Marriage of Riley*, 817 S.W.2d 644, 647 (Mo.App. 1991). Nevertheless, we have reviewed the claim for plain error under Rule 84.13(c). We find no such error.

ficer assigned to J.M.'s case in 1990. The officers described J.M. as a repeat sexual offender diagnosed as a teenage pedophile and in need of treatment at a residential facility with a highly structured, therapeutic program specifically designed for juvenile sexual offenders. Hensiek testified he was aware of no private residential treatment program that would accept J.M. given his age and history of offenses. Further, both officers testified that no public facility in the state was appropriate for J.M., including those operated by or under contract with the Division of Youth Services and the Department of Mental Health, given the nature of J.M.'s offenses, his referral history, and his need for a program specifically designed to treat sexual offenders. Lastly, both officers testified J.M. did not qualify for services from the Division of Family Services because he had not been abused or neglected and had only a history of delinquency before the juvenile court. In attempting to place J.M., Donovan conducted a lengthy search for a residential treatment program among more than thirty sexual offender programs in the nation.

Father contends the evidence was insufficient to support the court's finding because "[t]here was no testimony from an official of the Division of Family Services, the Division of Youth Services, or the Department of Mental Health; nor was there any testimony from any psychiatrist or psychologist regarding the Juvenile's diagnosis or specific treatment needs."

At the hearing, Donovan testified he had contacted the psychiatrists, psychologists, and therapists who treated J.M., and had access to the psychiatric reports of one of the treating psychiatrists. Donovan also indicated he was aware J.M. had been diagnosed as a pedophiliac and suffered from a learning disorder and depression. Similarly, Hensiek testified he was familiar with the facts of the case and was aware the psychiatrists treating J.M. had identified certain treatment needs. Father offered no contradictory evidence and never object-

ed to the competency of the juvenile officers or to the evidence of J.M.'s treatment needs as a juvenile sexual offender. Moreover, father testified he wanted J.M. to receive the intensive treatment the experts indicated he needs, and stated the "only problem" he had with J.M.'s placement at Rebound was the program's cost. Lastly, Donovan testified that in attempting to place J.M., he consulted with representatives of the Department of Mental Health and Division of Youth Services, who concluded that neither agency had a facility in Missouri that was adequate to meet J.M.'s needs. Again, father never objected to this testimony and offered no evidence showing that there was an appropriate treatment resource available through these agencies or that J.M. did qualify for services from the Division of Family Services.

From all the testimony adduced, we find substantial and competent evidence in the record to support the court's finding that no public or private facility in Missouri was capable of meeting J.M.'s specific treatment needs, including those facilities available through the Division of Family Services and the Department of Mental Health. Point one is denied.

In his second point, father contends the juvenile court exceeded its jurisdiction in ordering him to pay $80.00 per day toward the cost of J.M.'s treatment, because the amount exceeded the amount calculated pursuant to Rule 88.01 and the court failed to consider father's other financial obligations.

■ On this point, father admits he failed to file Civil Procedure Form No. 14, the worksheet used to determine the "presumed child support amount" pursuant to Rule 88.01. Nevertheless, he urges us to review his claim of error on the merits, since his statement of income and expenses was admitted into evidence and the court took judicial notice of the child support guidelines.[2]

---

2. We note that the court in its order found the child support guidelines were insufficient to provide for J.M.'s treatment as a teenage pedophile, and that their application would therefore be inappropriate. There was no evidence that father, mother, or the court calculated the presumed amount of support in accordance with Form 14.

In *Ibrahim v. Ibrahim,* 825 S.W.2d 391 (Mo.App.1992), our southern district held that an appellant's failure to show he submitted a completed Form 14 to the trial court is "akin to pursuing a different theory for recovery on appeal than was pursued at trial," and declined to convict the lower court of error on an issue not before it. *Id.* at 398. Father cites us to *Behnke v. Behnke,* 829 S.W.2d 45 (Mo.App.1992), where this court reviewed husband's claim although he failed to include the completed worksheets in the record on appeal. Although the court in *Behnke* proceeded to review the claim on its merits, it warned that an appellant seeking relief from a child support award without including the completed forms "is doing so at his or her peril." *Id.* at 46 n. 5. We find nothing to distinguish this case from *Ibrahim.* Point denied.

In point three, father contends Judge Martin Schiff, Jr. exceeded his jurisdiction in conducting a hearing and ruling on the juvenile officer's motion to modify, since he was bound by the writ of prohibition issued by this court on February 25, 1992. Father's point is without merit.

As detailed earlier, father's petition for writ of prohibition was directed toward an order entered by Judge Alphonso Voorhees on November 1, 1991, transferring custody of J.M. to Rebound and ordering father to pay $100.00 per day for J.M.'s support and maintenance. The writ petition asserted Judge Voorhees exceeded his jurisdiction in entering the order by failing to conduct an evidentiary hearing and failing to make certain determinations and findings. On February 25, 1992, this court entered an order making the preliminary order in prohibition permanent and setting aside Judge Voorhees' order.

It is true, as father asserts, that Judge Schiff was bound by this Court's orders in prohibition although they were directed against Judge Voorhees. *See State ex rel. St. Louis County v. Enright,* 729 S.W.2d 537, 541 (Mo.App.1987). However, the permanent writ of prohibition did not prohibit the juvenile court from considering the juvenile officer's motion to modify pursuant to Rule 119.09 and § 211.251.2 RSMo (Supp.1992), or from conducting a hearing on the motion and entering a modification order.[3] Point three is denied.

Judgment affirmed.

REINHARD and CRIST, JJ., concur.

---

3. In his argument on this point, father also asserts that the hearing was "a mere formality" to appease him, and that the decision to send J.M. to the Rebound program was made prior to the hearing on the motion to modify. Again, father has failed to include this claim in his point relied on and has failed to preserve it for our review. *Riley,* 817 S.W.2d at 647. We have reviewed the claim and find no plain error under Rule 84.13(c).