**In the Interest of D.M.Y., a child under seventeen years of age.**

**D.M.Y., Appellant,**

**Deputy Juvenile Officer, Twenty–Seventh Judicial Circuit, Respondent.**

**No. 19615.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 2, 1995.

Jeffrey L. Dull, Osceola, for appellant.

James K. Journey, Clinton, for respondent.

PARRISH, Judge.

D.M.Y. appeals a judgment of the Juvenile Division of the Circuit Court of St. Clair County (the juvenile court). The juvenile court adjudicated D.M.Y. guilty of delinquent conduct as established by § 211.031.1(3) [1] and determined that no suitable community based treatment service existed; and that existing community based treatment service had failed to meet the child's needs. D.M.Y. was committed to the custody of the Division of Youth Services as permitted by § 219.021. This court affirms.

D.M.Y.'s date of birth is September 23, 1977. A petition was filed pursuant to § 211.091 and Rule 114.01 alleging conduct by D.M.Y. that violated state law. It alleged that on or about March 28, 1994, D.M.Y. committed acts denominated by § 566.120, RSMo Supp.1992, as sexual abuse in the third degree; that D.M.Y. subjected T.B. to sexual contact [2] by grabbing "her breasts and crotch area with his hands all without her consent." [3]

For purposes of review, this court views the facts presented in evidence and the reasonable inferences therefrom in the light most favorable to the trial court's judgment. *In Interest of L.W.*, 830 S.W.2d 885, 886 (Mo.App.1992).

Appellate review of juvenile proceedings is in the nature of appellate review of court-tried civil cases. *C.R.K. v. H.J.K.*, 672 S.W.2d 696, 698 (Mo.App.1984). The trial court's order is the judgment from which this appeal was taken. Section

---

1. References to statutes are to RSMo Supp.1993, unless stated otherwise.

2. § 566.010(2) states, " 'Sexual contact' means any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person."

3. The petition alleged two other violations of state law. The trial court found there was insufficient evidence to sustain those allegations.

211.261, RSMo 1986; Rule 120.01. As such, it "will be sustained . . . unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

*Id.*

D.M.Y. had a history of school behavioral difficulties including being disrespectful to teachers, being involved in altercations at school and destroying property of others. He was placed in a homebound education program. Students in the homebound education program are segregated from the general school population.

T.B. is a certified teacher. She was D.M.Y.'s homebound teacher at a secondary school in St. Clair County, Missouri, during the 1993–94 school year. Her professional training includes a masters degree in special education. T.B. tutored D.M.Y. at the school from 3:30 to 6:00 p.m. on Mondays and Wednesdays.

Regular school classes were dismissed at 3:20 p.m. A school bus driver would bring D.M.Y. to the homebound school. D.M.Y. would arrive early, before 3:30. He was supposed to wait in the office until time for his homebound class, but he usually went directly to T.B.'s classroom.

On the day the incident occurred that is the subject of this appeal, T.B. had bus duty. D.M.Y. arrived at the classroom before she did. She got there about 3:30 or 3:35 p.m.

D.M.Y. had received his grades from the school counselor. He was displeased with a physics grade—an assignment had not been completed. D.M.Y. argued that T.B. had given him the assignment late; that he had not done the assignment because he had not received it when he should. After T.B. explained that he had received the assignment at the proper time, D.M.Y. continued to complain. He was told that the matter would not be discussed further. T.B. described him as "getting angrier and angrier."

D.M.Y. had asked permission to take some completed art assignments home to show his mother. The assignments, pictures, were kept by another teacher. T.B. told D.M.Y. she would photocopy the pictures and keep the photocopies in the school files; that he could take the assignments home. She left the classroom to get the pictures and make the photocopies. When she returned, she discovered that D.M.Y. had broken some Easter decorations that were in the room—decorated eggs that T.B. had purchased in Germany. He had punched holes in the eggs.

T.B. sat down at her desk. D.M.Y. asked her if she wanted a car key returned that had been taken from her desk three weeks earlier. He gave her the key. She put it on the desk and continued working. D.M.Y. then put his arm around her shoulder and tried to kiss her. She pushed him away. After T.B. reprimanded him, D.M.Y. walked to the classroom door as if he were leaving. T.B. got up from behind her desk. She explained, "And I got up from behind my desk because, because I really felt kind of trapped, in the way my desk sits. And then he turned around and came back towards me and umm, I really don't remember what he said. He grabbed me with both hands. He grabbed my breast."

T.B. was asked the following questions and gave the following answers:

Q. [By the attorney for the juvenile officer] Did he make contact with anything?

A. Yes, he did. He grabbed ahold of my breast and he grabbed ahold of me.

Q. His hands were directly against your clothing that cover [sic] your breast. Is that correct?

A. Yes.

Q. And the other hand, where was it?

A. Between my legs.

Q. Did it make contact with your body, albeit through your clothes?

A. Yes, it did; it hurt.

■ A hearing on a juvenile court petition is bifurcated. The first part of the hearing is directed to allegations in the petition that must be proven to establish jurisdiction. Rule 119.02(a)(7). The allegations in this case were that D.M.Y. violated a state law;

that he committed acts that constituted the criminal offense of sexual abuse in the third degree. § 211.031.1(3).

The second part of a juvenile court hearing is directed to the case disposition. If the juvenile court determines it has jurisdiction, and that the acts alleged were committed by the child, it receives evidence regarding appropriate treatment. Rule 119.02(a)(9). The juvenile court then enters judgment directing what action should be taken with respect to the juvenile. § 211.181; Rules 119.02(a)(10) and 119.06.

D.M.Y. presents two points on appeal, one directed to the adjudicatory phase of the hearing and one directed to the dispositional phase. Point II is directed to the adjudicatory phase; Point I to the dispositional phase.

■ Point II alleges that the juvenile court erred in finding it had jurisdiction because the evidence was not sufficient to prove beyond a reasonable doubt that D.M.Y. did the acts of which he was accused. Because the acts D.M.Y. was alleged to have committed would be a crime if committed by an adult, that conduct must be proven beyond a reasonable doubt. *In Interest of P.A.M.*, 606 S.W.2d 449, 452 (Mo.App.1980); *In Interest of J.L.P.*, 600 S.W.2d 47, 50 (Mo.App.1980); Rule 117.05(a).

The juvenile court found, beyond a reasonable doubt, that D.M.Y. committed acts that constituted the criminal offense of sexual abuse in the third degree. That finding is equivalent to a jury verdict. *P.A.M., supra,* at 453.

■ D.M.Y.'s claim that there was not sufficient evidence to find that he committed the acts with which he was charged is based on conflicting testimony and inferences. This court defers to the juvenile court, as the trier of the facts, for purposes of weighing conflicting evidence and assessing credibility of witnesses. *Id.*

■ The evidence, considered in the light most favorable to the judgment rendered, established beyond a reasonable doubt that D.M.Y. committed acts that if done by an adult would have constituted the crime of sexual abuse in the third degree. This court does not have a firm belief that the juvenile court's finding is wrong. *See Murphy v. Carron,* 536 S.W.2d at 32. Point II is denied.

Point I is directed to the juvenile court's disposition; its commitment of D.M.Y. to custody of the Division of Youth Services. The juvenile court's order, the judgment from which the child appeals, recited services previously provided D.M.Y. in his home community: informal probation, formal probation, community service/restitution program, psychiatric evaluation, inpatient drug and alcohol treatment, counseling and educational services through the school district. The order states: "These services have not been effective in correcting his behavior; and, his behavior is becoming more assaultive and violent. This Court [i.e., the juvenile court] finds that reasonable efforts have been made to keep [D.M.Y.] in his home, but have failed due to his increasing assaultive behavior."

■ Point I contends the juvenile court erred in committing D.M.Y. to custody of the Division of Youth Services because "there was not clear and convincing evidence that reasonable efforts had been made by the Division of Family Services to meet the needs of the juvenile and his family to prevent the removal of the juvenile from his home."

The only case D.M.Y. cites in support of his claim of error is *In Interest of A.L.W.,* 773 S.W.2d 129 (Mo.App.1989). That case did not involve a finding of delinquent conduct nor a commitment to the Division of Youth Services. It was a neglect case.

*A.L.W.* involved petitions filed by a juvenile officer alleging that four children were in need of care because they were left unattended in their home. The petitions alleged that the parents or others who were responsible for the care of the children refused to provide proper care or support. They were based on § 211.031.1(1)(a), RSMo 1986.[4]

---

4. The applicable provisions of § 211.031.1(1)(a), RSMo 1986, are essentially the same as RSMo Supp.1993.

In *A.L.W.* the court held that in neglect cases, before a child may be removed from his or her home, § 211.183, RSMo Supp.1988, required a determination that the Division of Family Services had made reasonable efforts to prevent or eliminate the need for removal of the child. The court held that a juvenile court could not order children removed from a parent unless the Division of Family Services had used reasonable diligence to apply all available services to meet the childrens' and the family's needs in order to prevent the need for removal. It held that neglected children could be removed from parents only when necessary for the childrens' protection. 773 S.W.2d at 132–33.

*A.L.W.* dealt with removal of neglected children from the custody of their parents. The restrictions it imposed on placing neglected children in foster care do not apply to commitments of delinquent children to the Division of Youth Services.[5]

The general assembly recognized a need to scrutinize removal of children for causes not of the childrens' making. Section 211.183.5 assures that juvenile courts will consider factors the general assembly deemed relevant before placing children in foster care. Those factors do not pertain to commitments to the Division of Youth Services for delinquent conduct. Section 219.021 specifies the criteria for Division of Youth Services commitment.

Likewise, Rule 119.06 differentiates between judgments that include dispositions for foster care placement and judgments for other placements outside the home. Rule 119.06(c) requires judgments ordering children placed in foster care to include determinations that reasonable efforts were made to eliminate the need for removal and that continuation of a child in the home would be harmful to the child's welfare; whereas, Rule 119.06(d) does not require that those determinations be included in other judgments placing children outside their homes.

The juvenile court exercised jurisdiction over D.M.Y. pursuant to § 211.031.1(3) be-

cause of his delinquent behavior. The order committing D.M.Y. to the Division of Youth Services is consistent with requirements of § 219.021. Point I is denied. The judgment is affirmed.

GARRISON, P.J., and CROW, J., concur.

---

**5.** § 211.181.1 permits placement of neglected children outside their homes. Subsection (2)(a) of that statute specifically prohibits commitment of those children to the Division of Youth Services.