**In the Interest of: R.A. and E.A., Plaintiffs.**

**JUVENILE OFFICER, Respondent,**

**v.**

**R.A. and A.A., Natural Parents, Appellants.**

**No. WD 50789.**

Missouri Court of Appeals, Western District.

Jan. 9, 1996.

Mark T. Benedict, Kansas City, for Appellants.

Nancy Alemifar, Kansas City, for Respondent.

Dale Nathan Godfrey, Kansas City, Guardian Ad Litem.

Before FENNER, C.J., P.J., and SPINDEN and SMITH, JJ.

SMITH, Judge.

R.A. and A.A. appeal from the family court's order removing R.J.A. and E.A. from the family home. The parents assert three points on appeal. In Point I, they assert that the Division of Family Services did not make reasonable efforts in providing services to the parents-appellants prior to removal. In Point II, they assert that the trial court's finding that DFS efforts failed to prevent removal of the children from the home was not supported by substantial evidence and thus the court failed to state in its findings why further efforts could or could not have prevented or shortened the separation of the family. In Point III, they assert that by placing E.A. in St. Charles, Missouri, the juvenile court abused its discretion and prevented reasonable efforts from being made because the parents have severe financial hardships and no transportation to facilitate family contact, and the placement prevents meaningful in-home services from being provided to the family. We affirm.

## FACTS

On or about January 5, 1994, DFS investigated the A. household and found that the home presented intolerable living conditions

due to the unsanitary conditions of the home. E.A.'s hygiene was so poor that her health was affected. The house was generally filthy and foul smelling; the house was infested with roaches; dog and cat feces covered all the floors; the kitchen appliances were covered with dirt and grease; and dirty laundry was piled on the floor in the back two rooms. DFS removed E.A. from the home and on or about January 6, 1994, a petition in the interest of the child was filed with the juvenile court. Family Preservation Services (hereinafter FPS) accepted the case. The petition was voluntarily dismissed without prejudice and E.A. was returned home. DFS provided FPS to the family from January 7, 1994 to February 18, 1994. The parents maintained a minimal standard of cleanliness of the home during this period. They were able to keep the home picked up; there were no dirty clothes on the floor, dirty dishes laying out or animal feces on the floor. As a follow-up, FPS aftercare services were provided from February to June 1994, after which the condition of the home deteriorated quickly.

Allegations of unsanitary conditions and neglect of E.A. resulted in DFS investigations on June 15, 1994, and again on July 25, 1994. R.J.A. was born on July 23, 1994. Mother failed to obtain any prenatal care for R.J.A. and in the two months before birth, she rarely moved from the living room couch where she would, at times, soil herself.

E.A. was removed from the home and placed with her maternal grandmother on or about July 26, 1994. By August 1994, the condition of the home had deteriorated to a state similar to that which existed prior to FPS intervention in January. On August 5, 1994, R.J.A. was placed in foster care in the Kansas City area.

DFS authorized psychological evaluations for the parents on September 16, 1994. On September 29, 1994, the Court placed E.A. in the care and custody of a maternal cousin in St. Charles, Missouri. The father obtained an evaluation in October, however, the mother refused to submit to one as of the end of November 1994 when the authorization expired. The father's evaluation evidenced that he required parenting classes and counseling in order to insure a safe home environ-ment. In November, a community-aide worker began providing in-home housecleaning services and in December, a family therapist conducted a bonding assessment.

The parents together only visited R.J.A., their newborn, three times and the Father alone visited only an additional two times from August 5, 1994 to January 9, 1995. Preceding the January 9 order, they had not visited for over a month. On January 9, 1995, the court ordered placement of both E.A. and R.J.A. with their paternal second cousin in St. Charles, Missouri. The custodian was ordered to provide the parents with visitation at least once a month. Parents filed a timely appeal.

## STANDARD OF REVIEW

Juvenile proceedings are governed by the practices and procedures customary of proceedings in equity for purposes of appellate review. *Interest of D.M.Y.*, 892 S.W.2d 792, 793 (Mo.App.1995). The trial court's order is the judgment from which the appeal was taken. Mo.Rev.Stat. § 211.261 (1994); Rule 120.01. The trial court's decision will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the sufficiency of the evidence, this court views the facts presented in evidence and the reasonable inferences therefrom in the light most favorable to the trial court's judgment. *Interest of D.M.Y.*, 892 S.W.2d at 793.

## POINT I

Appellant asserts that the Division of Family Services did not make reasonable efforts in providing services to the parents-appellants prior to removal.

Section 211.183.1 provides:

In juvenile court proceedings regarding the removal of a child from his home, the order of disposition shall include a determination of whether the division of family services has made reasonable efforts to prevent or eliminate the need for removal

of the child and, after removal, to make it possible for the child to return home.

Mo.Rev.Stat. § 211.183.[1]

"The emphatic direction of § 211.183, that only after reasonable effort to avoid the need for removal of a child from the home may the order for removal issue, expresses the legislative concern for the integrity of the family consonant with the welfare of the child." *In Interest of A.L.W.*, 773 S.W.2d 129, 134 (Mo. App.1989). The order of disposition under § 211.183 affects the fundamental right of natural parents to rear their own children free of undue governmental interference. *Id.*

Here, the DFS provided Family Preservation Services (FPS) to the family from January 7, 1994 to February 18, 1994. The parents maintained a minimal standard of cleanliness of the home during this period. As a follow-up, FPS aftercare services were provided from February to June 1994. However, by August 1994, the condition of the home had deteriorated to a state similar to that which existed prior to FPS intervention.

DFS authorized psychological evaluations for the parents. The father obtained an evaluation in October, however, the mother refused to submit to one as of the end of November 1994 when the authorization expired. A community-aide worker also began providing home house cleaning services in November. In December 1994, a family therapist conducted a bonding assessment.

For purposes of § 211.183, reasonable efforts to prevent or eliminate the need for removal of the child from his home have to be made prior to the order of disposition. § 211.183. The order of disposition in the case at bar was January 9, 1995. FPS services along with several other services were provided, however, the parents reverted back to their prior lifestyle when not under strict supervision. There was no reasonable expectation that further services would change the situation given their lack of progress and cooperation.

▇ In this case, the services provided were sufficient to establish reasonable ef-

forts. DFS made available FPS with aftercare services, psychological evaluations for purposes of identifying counseling needs, homemaker services and a bonding assessment. The parents neglected to take advantage of the services resulting in a failure to adjust their circumstances or conduct to provide a proper home. It is the function of DFS to provide services. However, it is not their responsibility to compel the parents to accept them.

▇ In some situations, the statute authorizes removal without finding reasonable efforts to keep the family intact. § 211.183. Section 211.183.4 allows "removal of the child even if the preventive and reunification efforts of the division have not been reasonable, but further efforts could not permit the child to remain at home." § 211.183. Notwithstanding a reasonable efforts finding, removal in this case is supported by this statutory provision. The parents have failed to cooperate and make progress, thereby negating the proposition that future efforts would produce a different result.

We find the juvenile court's order of removal is supported by a finding of reasonable efforts. Furthermore, assuming the record would not support such a finding, it clearly establishes that further services would have been of no consequence. Removal of the children is supported under either approach. Point denied.

### POINT II

Appellant claims the trial court's finding that DFS efforts failed to prevent removal of the children from the home in that such findings are not supported by substantial evidence. Additionally, the court failed to state in its findings why further efforts could or could not have prevented or shortened the separation of the family. Section 211.183.3 provides "the court shall enter findings ... why further efforts could or could not have prevented or shortened the separation of the family." Section 211.183.5(4) provides " ... the court shall in its orders: State why ef-

**1.** All statutory references are to the Revised Stat-

utes of Missouri, 1994, unless otherwise noted.

forts made to provide family services described did not prevent removal of the child."

■ This court held that DFS did not have to provide the parent all services at their disposal before the termination of parental rights. *In Interest of J.M.*, 815 S.W.2d 97, 102 (Mo.App.1991). When the parents refuse to cooperate with and fail to progress in services offered, the court may find that additional services would be useless. *In Interest of L.M.*, 807 S.W.2d 195, 199 (Mo.App.1991).

■ Here, the court found that efforts made to provide family services did not prevent removal of the children due to insufficient progress in rectifying severe and chronic unsanitary conditions in the home. The condition of the home deteriorated rapidly when the parents were not under close supervision. Additionally, the mother failed to obtain a psychological evaluation so that appropriate counseling and other potential recommendations could be assessed. The father required parenting classes and counseling.

In the judgment entered, the court found that certain services, including parenting counseling, could have been offered by the DFS, but such offer would not have prevented removal nor allowed for reunification of the family at that time. Due in part to the parent's uncooperativeness and lack of progress in the services that were provided.

A termination of parental rights is a larger infringement of the parent's fundamental rights than a removal proceeding. It follows that the burden would be equal or greater, but certainly not less. In the case at bar, the parents argue that additional services may have prevented removal of the children. However, the parents have been uncooperative and made insufficient progress in the services that were provided. DFS is not required to provide each and every available service before removal. *In Interest of J.M.*, 815 S.W.2d at 99. Point denied.

### POINT III

Appellant alleges that by placing E.A. in St. Charles, Missouri, the juvenile court abused its discretion and prevented reasonable efforts from being made because the parents have severe financial hardships and no transportation to facilitate family contact, and the placement prevents meaningful in-home services from being provided to the family as recommended by the juvenile officer's experts.

■ Appellant does not point us to any authority regarding the factors to be considered in placing a child outside the home. The rule favoring parental custody is superseded by the concerns of the State for the child's welfare when the two are in conflict. *In Interest of C.L.M.*, 625 S.W.2d 613, 617 (Mo. banc 1981). The trial court is accorded great deference with regard to fact finding issues and the credibility of witnesses. *In Interest of L.J.M.S.*, 844 S.W.2d 86, 91 (Mo.App.1992). This court will reverse only when it is of firm belief the judgment is wrong. *Id.*

■ R.J.A. has remained in the Kansas City area since the children's removal from the home in August. Preceding the January 9, 1995 order, the parents had not visited R.J.A. for over a month. The parents did not regularly visit their newborn baby who remained in the Kansas City area. There is no evidence to support a finding that had E.A. been in the Kansas City area the parents would have been more diligent in their visitation efforts.

The same reasoning applies to their argument regarding the placement of both children in St. Charles. They are not asserting their right to visit anyway. No harm will result from the parents not being able to go down to the state office or wherever to meet with the children. The custodian is required to provide at least monthly visitation to the parents. This once a month visitation is more than what the parents were exercising prior to the removal order.

The children's welfare is the key consideration when removing children from parental custody. There is ample evidence in the record supporting the juvenile court's order placing both children in St. Charles. Furthermore, the placement did not result in harm to the parents since the visitation is equal to or greater than when R.J.A. was in

Kansas City. We find the juvenile court did not abuse its discretion. Point denied.

Judgment affirmed.

All concur.