94 S.W.3d 420 (2003)
In the Interest of L.E.C., J.I.C, and B.C, III, Plaintiffs,
Juvenile Officer, Respondent,
v.
K.C. (Mother), Appellant.
No. WD 61306.
Missouri Court of Appeals, Western District.
January 21, 2003.
*421 George Lee Stafford, Slater, MO, for Appellant.
Donald George Stouffer, Marshall, MO, for Respondent.
Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and LISA WHITE HARDWICK, JJ.
JAMES M. SMART, JR., Judge.
The Circuit Court of Saline County held a permanency hearing to determine whether K.C.'s children, Layla, Jennifer, and Bernardo, should continue in foster care, be returned to the custody of their mother, or whether proceedings should be instituted to terminate the parent's rights and legally free the children for adoption. The children's mother, K.C., also filed a motion for physical custody of the children or, alternatively, for expanded visitation, which was heard with the evidence presented at the permanency hearing. The court terminated Mother's visitation rights and determined that the future permanency plan for the children was adoption. Mother now appeals.

Statement of Facts
The facts of this case expose an extended family rife with sexual and criminal misconduct. On February 26, 1997, Jennifer was scratching between her legs during her kindergarten class. The school nurse removed a pubic louse from the inside of her labia and notified the Missouri Division of Family Services ("DFS"). Social workers from DFS interviewed Jennifer that day. Jennifer gave a graphic and detailed account of sexual abuse, implicating her father as the perpetrator. At the time, Jennifer was six years old.
Jennifer's mother ("Mother") was also interviewed that afternoon by DFS. Mother was told not to discuss anything with Jennifer and that the next day DFS would conduct a videotaped interview and a physical exam on Jennifer. Jennifer was allowed to return home with Mother that evening because the father, B.C. ("Father"), would not be home. In spite of DFS instructions, that evening Mother did discuss the allegations of sexual abuse with Jennifer. Mother clearly implied to Jennifer that she did not believe Jennifer. Mother told Jennifer that Father would go to jail if she lied and told her to tell "the truth."
The DFS took Layla, Jennifer, and Bernardo into protective custody the next day. A SAFE exam was conducted on Jennifer; her hymeneal opening was double the normal size for a child her age, and her vaginal vault showed signs of chronic irritation. Father was found guilty of statutory rape, § 566.032, RSMo 1994, for having sexual intercourse with Jennifer. Father was sentenced as a persistent sexual offender,[1] § 558.018, RSMo 1994, to life imprisonment.
*422 Mother was granted visitation with her children of one hour per week from April 1997 until October 1999, when the visitation was reduced to one hour per month. All visitations with the mother were supervised in a therapeutic environment. The children exhibited behavioral disturbances but appeared to make progress. Mother missed some scheduled visitations and meetings with DFS workers. Mother also exhibited some difficulty planning for the future and exercising child discipline, but did make progress. The Circuit Court of Saline County, after a permanency hearing, determined in April 2001 that DFS should attempt to return the children to their mother. Mother's visitation was increased to one hour per week and then increased to unsupervised weekend visitation.
Mother had agreed with DFS to conduct her unsupervised weekend visitations at her parents' house. During a weekend visit in early September, however, Mother instead took Layla, Jennifer, and Bernardo to spend the weekend at the trailer home of her sister and brother-in-law, Edith and Ronald. Her brother-in-law's father and brother, Russell B. and Michael B., lived in a trailer directly adjacent to Edith and Ronald's trailer. Russell and Michael B. are convicted sexual offenders. Mother was aware that Russell and Michael lived in the adjacent trailer and knew they had a history of sexual offenses. Russell had been incarcerated for molesting his own children. Michael had been incarcerated for forcible sodomy. In 1993, Mother and Father had also accused Michael of molesting Layla.
Mother and the children arrived at the trailer of Mother's sister Friday night. On Saturday, Mother, her sister (Edith), and the female children went out for the day. Ronald stayed at the trailer. Mother's conduct violated a written service agreement Mother had signed with DFS, agreeing that she not leave the children alone with any other person. Michael was also at the trailer. Mother did not worry about leaving Bernardo in the presence of Michael, a convicted sexual offender, she said, because her brother-in-law was also there.
On Sunday, Edith went to work and left Mother to watch all of the children at the trailer. That afternoon, Russell came over to the trailer. Layla and her cousin, Natasha, were playing in Natasha's bedroom while Mother and the other children were in the living room watching movies. Russell went into Natasha's bedroom. Russell was alone with Layla and Natasha for at least five minutes. During that time, Russell kissed Layla and Natasha with his tongue and put his hand in Natasha's underwear. Layla left the room and told Mother what had happened. Mother was aware that Russell had also tried to kiss Layla in the past. Mother told her to stay in the living room with her. Then Natasha left the bedroom and told Mother what Russell had done to her. Mother told Natasha to tell Russell to stop kissing her. When Natasha replied that Russell didn't listen, Mother told her that she would discuss it with Edith, Natasha's mother. After Edith arrived at the trailer, Mother told her what had happened. Edith did not act surprised and said that she would discuss the matter with her husband. Mother then left with her children. Neither Mother nor Edith reported the incident to the police or DFS.
In late September, DFS determined that the children should be placed with Mother for a ninety-day trial home placement. The children were placed in Mother's home on September 26, 2001. During the same week, DFS received a hotline call that Natasha was being molested by Russell B. During the subsequent investigation, *423 DFS learned that Natasha and Layla had been molested while under Mother's supervision. DFS also determined that Mother was aware of the incident but that she did nothing to report it or to prevent the abuse from continuing. Two days after the start of the ninety-day home placement, the children were removed from Mother's home and returned to foster care.
The Juvenile Officer for Saline County filed a motion for permanency hearing, pursuant to § 210.720, RSMo, concerning Layla in November 2001. Mother filed a motion for physical custody of Layla or, alternatively, for expanded visitation rights in December 2001.[2] The Circuit Court of Saline County held a permanency hearing relating to all three children and Mother's motion. The court denied Mother's motion and changed the permanency plan from reunification with Mother to adoption. Mother's visitation was terminated. Mother now appeals.

The Motion For Custody or Expanded Visitation
Mother raises two points on appeal. First, Mother challenges the trial court's denial of her motion for custody or expanded visitation on the grounds that the decision was against the weight of the evidence. Mother filed a motion for physical custody of Layla or, alternatively, for expanded visitation. Layla was in the custody of DFS, under the supervision of the juvenile court. Section 211.251.2, RSMo 2000, provides that "the parent ... of a child committed to the custody of an institution or agency may, at any time, petition the court for a modification of the order of custody." Denial of Mother's motion is appealable under § 211.261.1, RSMo: "An appeal shall be allowed to a parent from any final judgment, order or decree made under the provisions of this chapter which adversely affects him." The denial of a parent's petition for custody or visitation adversely affects the parent, and the court's continuing jurisdiction over the child does not defeat the right to appeal. In Interest of N.D., 857 S.W.2d 835, 842 (Mo.App.1993).
Juvenile proceedings are in the nature of civil proceedings. The scope of review is that of a court-tried case. In Interest of J.M., 847 S.W.2d 911, 913 (Mo. App.1993). Review of the order denying custody or visitation is limited to a determination of whether there is substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)).
Mother argues that the trial court's decision was against the weight of the evidence because she has demonstrated both the ability and the desire to perform her functions as a mother. Specifically, Mother points out that she has secured adequate housing and employment. Mother has also regularly attended visitation and counseling with her children. Layla testified that she desires to live with her mother.[3]
Mother's desire to reunite with her child is evident. Her ability and will to protect her children from the abuse of others are not. Layla has been exposed to sexual abuse since she was a small child. Mother voluntarily exposed Layla to a home that sat only a few feet from the residence of *424 Michael B., a man that Mother had previously accused of sexually abusing Layla. Michael had also been convicted of sexually abusing another child. Mother did not consider the psychological impact on Layla of having her past sexual abuser in close proximity. Mother also did not feel that leaving her son, Bernardo, with Michael was inappropriate. Russell B., a man who had been incarcerated for molesting his own children, was allowed by Mother to be alone in a room with Layla and Mother's niece, Natasha. When Layla and Natasha reported sexual abuse, Mother did not report Layla's abuse to authorities and took no action to ensure that Natasha would be protected from Russell in the future. In essence, Mother acquiesced to the sexual abuse of Layla.
Mother's ability to shelter and economically care for Layla covers only a small spectrum of the duties which constitute parenthood. Mother fails to acknowledge the importance of the duty to protect her children. Mother refused to believe Jennifer when abuse was evident. Mother's attitude toward the abuse of her children is far too casual. We agree with the Juvenile Officer that Mother has not shown the capacity to protect her children.
Mother argues that her error in taking Layla to her sister's house was an isolated incident that will not be repeated. Mother now says that she realizes that her actions were inappropriate. Mother, however, downplays the fact that she ignored the abuse that occurred and did nothing to address the offense. The fact that Mother will agree to not return to her sister's house fails to assure that Mother will protect the children against abuse and report abuse that might occur in the future at another location. The trial court's decision was predicated not on one instance of failure, but on Mother's pattern of failure to protect her children.
The trial court made the following findings when denying custody and visitation:
[T]he mother ... has failed to adequately supervise the minor children while in her care and control, to-wit: mother violated the terms of her written service agreement with DFS; mother allowed the minor children to have contact with known sexual offenders; mother is unable to adequately supervise, protect, and/or provide for the safety of the minor children.
Furthermore, the court noted that "Jennifer and Layla are past victims of sexual abuse and/or maltreatment; mother has demonstrated a pattern of being unable to adequately protect the children from exposure to further sexual abuse and/or maltreatment" and that "mother has demonstrated a pattern of denial regarding her shortcomings."
Based on the record and findings of the trial court, this court cannot say that the trial court's decision was against the weight of the evidence. Point I is denied.

The Permanency Plan
Mother's second point on appeal is that the trial court erred in changing the permanency plan from reunification to adoption.
If a child has been placed in the custody of DFS or has been placed in foster care by a court, a written report concerning the status of the child must be filed in the court every six months. Section § 210.720.1, RSMo. After the report is filed:
The court shall review the report and shall hold a permanency hearing within twelve months of initial placement and at least annually thereafter. The permanency hearing shall be for the purpose of determining in accordance with the best interests of the child a permanent *425 plan for the placement of the child, including whether or not the child should be continued in foster care or whether the child should be returned to a parent, guardian or relative, or whether or not proceedings should be instituted by either the juvenile officer or the division to terminate parental rights and legally free such child for adoption.
§ 210.720.1, RSMo.
Here, the Circuit Court of Saline County held a permanency hearing concerning Layla, Jennifer, and Bernardo. The court determined that the juvenile officer should institute proceedings to terminate Mother's parental rights and terminated Mother's visitation with the children. Mother argues that the trial court erred because there was not clear and convincing evidence that changing the permanency plan was in the best interests of the children.
An order pursuant to § 210.720, RSMo, is not, on the face of the statute, appealable. Mother cites § 211.261, RSMo, which states that "[a]n appeal shall be allowed to a parent from any final judgment, order or decree made under the provisions of this chapter which adversely affects him" (emphasis added). The statute limits itself to judgments, orders, and decrees made under Chapter 211. Mother is appealing an order under § 210.720, RSMo, which, obviously, is not contained in Chapter 211. Section § 211.261, RSMo, is not applicable.
There is no common law right to appeal. Robinson v. Clements, 409 S.W.2d 215, 218 (Mo.App.1966). Authority to appeal must be found in applicable constitutional provisions, statutes, or the civil procedure rules. Franklin v. Franklin, 344 S.W.2d 282, 284 (Mo.App.1961). There is no statutory provision expressly granting the right to appeal from a § 210.710 order. The Rules of Practice and Procedure in Juvenile Courts, which govern § 210.720 orders,[4] allow an appeal only as provided by statute. Rule 120.01.
This court can find no basis in Chapters 210 and 211 for appeal of a § 210.720 order. These chapters do provide for the appeal of other rulings. If a court terminates parental rights, that order is appealable. § 211.261, RSMo. Other determinations made by a court in a § 210.720 order may be challenged by filing a petition for modification of the order of custody pursuant to § 211.251.2, RSMo, which are also appealable. § 211.261, RSMo.
The general statute relating to civil appeals is § 512.020, which allows appeals of final judgments of trial courts by any party "aggrieved" by any judgment. It is clear that a change in the "permanency plan" is not in itself a final adjudication. It is, as the name implies, a "plan," not a result, although certain changes are implemented in connection with the plan. The jurisdiction of the Circuit Court continues, however, and is one of ongoing management. Accordingly, we do not consider the ruling a final judgment under § 512.020. See, e.g., R.D. by Reine v. I.D., 778 S.W.2d 848 (Mo.App.1989) (ruling denying termination of parental rights and denying return of child to mother had effect of continuing child in foster care; ruling held not appealable because not final in view of continuing trial court jurisdiction).
Allowing appeals from § 210.720 orders would cause inefficiency and lengthen the time needed to address the ultimate issue of parental rights termination. To allow review of a § 210.720 order determining whether there is enough evidence to proceed with a termination hearing would *426 equate in concept with allowing appellate review of preliminary hearings in felony criminal proceedings. It would significantly impede a process designed to proceed expeditiously. We do not rule out the possibility that a parent may, in an appropriate case, be able to proceed by way of a writ proceeding to compel a juvenile officer to comply with applicable statutes. We conclude, however, that point II deals with a non-appealable matter and must be dismissed.

Conclusion
We affirm the trial court order denying the motion for custody or expanded visitation. We dismiss the appeal of the change in the permanency plan.
LOWENSTEIN and HARDWICK, JJ., concur.
NOTES
[1] Father was accused of raping Elizabeth J. in 1991 or 1992. Elizabeth is Mother's sister. Mother did not believe that the rape occurred. The record in this case does not indicate whether Father was convicted of that alleged crime, but Father clearly had been convicted of prior sexual offenses before the charge involving Jennifer. At the time Mother's children were removed from the home, Elizabeth J. and her husband were living with Father and Mother. Elizabeth's husband is Father's brother. Elizabeth's husband also has a criminal record, which was entered into evidence at the hearing on this matter. The criminal record was not included in the legal file.
[2] The legal file and record do not indicate that motions were filed by either the Juvenile Officer or Mother pertaining to Jennifer or Bernardo.
[3] Bernardo also expressed his desire to live with Mother, but he was not mentioned in the motion for custody or expanded visitation.
[4] Rule 110.01 provides that "Rules 110 through 128 shall govern practice and procedure in the juvenile and family courts under sections ... 210.700 to 210.760 RSMo...."