

# In the
# Missouri Court of Appeals
## Western District

IN THE INTEREST OF: L.S.H., L.H.,    )
L.H., JUVENILES; JUVENILE    )
OFFICER, Respondent,    )    **WD84939**
   )
v.    )    **OPINION FILED:**
   )    **September 20, 2022**
C.H., APPELLANT; T.S.,    )
RESPONDENT,    )
   )
           Appellant.    )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Jalilah Otto, Judge

Before Division Four: Gary D. Witt, Chief Judge, Presiding, Anthony Rex Gabbert, Judge and Daniel Kellogg, Special Judge

C.H. ("Father") appeals from the Circuit Court of Jackson County's ("trial court") Order and Judgment adopting the Family Court Commissioner's ("Commissioner") Findings and Recommendations ("Findings"), following a hearing regarding adjudication, disposition, and permanency. In its findings, the trial court adjudicated the Juvenile Officer's First Amended Motion to Modify and, based on Father's stipulation to Count I, that the children were in need of services and sustained the allegation therein. Relating to

the disposition hearing, the trial court found that the Children's Division exercised reasonable efforts to prevent removal of the children from the home and aid in the goal of reunification. The findings also stated, related to permanency, that the goal of termination of parental rights and adoption is the most appropriate. On appeal, Father argues (1) the trial court's finding that Children's Division exercised reasonable efforts to prevent removal of the children from the home and aid in the goal of reunification is not supported by substantial evidence and is against the weight of the evidence, and (2) the trial court's finding that Children's Division should exercise reasonable efforts toward the goal of termination of parental rights and adoption is a misapplication of the law. We affirm in part and dismiss in part.

## Factual Background

Three minor children, L.S.H., L.H., and L.H. (collectively "Children"), came under the jurisdiction of the Children's Division in 2020, due to the children's mother, T.S.'s ("Mother"), use of illegal substances while pregnant with L.H. Both L.H. and Mother tested positive for methamphetamine following L.H.'s birth.[1] The Juvenile office filed petitions alleging the children were in need of care and treatment, pursuant to section 211.031.1,[2] because Mother had used illegal substances while pregnant. Separate petitions were filed regarding the need of care and treatment for each child, however the trial court held the adjudication, disposition, and permanency hearing together following the Motions

---

[1] Mother is not a party to this appeal.
[2] All statutory references are to Revised Statutes of Missouri (2016), as currently supplemented, unless otherwise indicated.

2

to Modify and issued Findings related to all the cases pertaining to Mother and Father in a single judgment.

The petitions filed against Mother listed the children's father as unknown. However, in a report prepared for the protective custody hearing, the Children's Division listed Father as the putative father and his address as homeless. Following the protective custody hearing, the court issued an order placing the children in the custody of the Children's Division and further ordered, "[Father] shall not have contact with the premises in which the children reside." Children's Division called Mother to discuss the order, and Father took the phone away from Mother to express his frustration to Children's Division that he had been "singled out" in the order. Children's Division informed Father he was prohibited from being on the property, and Father became more upset on the phone. On December 2, 2020, the court sustained the allegations in the petition against Mother and further ordered, "No contact between [Father] and the children until he presents himself to the Court. Visits shall be separate from the mother's visits." The children remained in foster care and under the jurisdiction of the Family Court. Father had paternity tests scheduled for him in November 2020 and February 2021, but he missed those scheduled appointments, and paternity was not established until March 18, 2021.

On April 19, 2021, the Juvenile Officer filed Motions to Modify in the underlying cases, identifying Father as the children's father and alleging the children were in need of care and treatment, pursuant to section 211.031.1, because Father "has admitted to using marijuana while responsible for the children's care and custody and [Father] did not have a prescription for marijuana." The Motions to Modify further alleged, "Additionally, father

3

has a history of violent and threatening behaviors against the mother of some of his other children, A.B., which resulted in a Full Order of Protection entered against him[.]" Due to miscommunication regarding Father's living situation, Father did not receive the summons from the Motions to Modify.[3] Irrespective, ultimately, Father submitted to the jurisdiction of the court and does not challenge that jurisdiction on appeal.

Even before Father was named as a party in the Motions to Modify, Father had attended parent-child visitations with Mother to visit the children in foster care beginning in September 2020; these visits were documented in status review reports prepared by the Family Drug Court.[4] In these initial visits, Children's Division noted that, although the parents have had "good, fun visits" with the children, "[Father] seems to have different personalities in one visit. It seems like he snaps in and out of different personalities during the span of a visit." These initial reports also reflect that Father had obtained housing at Extended Stay America, a long-term stay hotel in Overland Park, Kansas, and worked as a maintenance man at the hotel.[5]

According to the status reports, Mother and Father did not visit the children in foster care from October 27, 2020 to January 29, 2021, citing scheduling challenges due to COVID-19 and "24-hour colds" suffered by Mother and Father. During the January 29, 2021, visit, the parents had to be instructed by a parent aide on basic tasks, such as getting

---

[3] Several case status reports list Father's address as "homeless," and others list his address as an apartment in Kansas City or various extended stay motels. The summons was mailed to the address showing an apartment in Kansas City, but it was returned as undeliverable.

[4] At the adjudication hearing, the court took judicial notice of the entire legal file, including the status review reports prepared by the Family Drug Court.

[5] At the adjudication hearing, Father testified that he has been living at the America's Best Value hotel since August 2020, and he testified that any reports stating that he lived at Extended Stay America were in error.

4

the children out of the car, carrying the food out of the car, and giving food to their children. During this visit, Father ate some of the children's food and bought a snack from the vending machine without offering any to Mother or the children. At one point, Father stepped outside and came back with "cigar papers hanging out of his pockets." At the end of the visit, Father failed to buckle one of the children into his car-seat. The report concludes, "The parent aide states [Mother] and [Father] did not act like parents at the visit."

Father was added as a party through the Juvenile Officer's Motions to Modify filed April 19, 2021, after which the Children's Division began conducting separate parental visitations for Father and Mother, despite their opposition. Status reports from May 14, 2021, show that Father had missed the previous two visits due to lack of transportation. Despite court orders to conduct regular urinalysis ("UA") testing and hair testing, the record shows that, as of June 28, 2021, "[Father] still has not completed any UA's or a hair test." In one case status report, Children's Division stated, "[Father] does not understand why he has to attend treatment or complete UA's. The conversation is very one-sided and it is difficult for the worker to get a word in. Worker advised [Father] to participate in the services that are ordered for him." Status reports also state that "The children have not had a visit with [Mother] or [Father] in all of May."

At the adjudication hearing, the Children's Division supervisor, Laura Green ("Green") testified regarding the services that were offered to Father in order to aid in the goal of reunification. Although Father was not added as a party until the Juvenile Officer filed the Motions to Modify, the Children's Division began offering services to Father when

5

the original petitions were filed against Mother in November 2020. Green testified that Children's Division had offered Father "drug testing information on treatment facilities and paternity testing, as well as parent aide services." Green testified that both Mother and Father had several parent aides throughout the pendency of the case, but some parent aides withdrew services due to "lack of participation or consistent participation." Based on the allegations of drug use, Green testified that Children's Division needed to see drug testing results from Father and participation in treatment services, but Father did not utilize the drug testing or treatment services offered. Green stated that Father had several appointments for paternity testing scheduled as early as November 2020 but missed those appointments, and paternity was not established until March 2021. Further, Children's Division had difficulty communicating with Father.

Father entered a stipulation as to the allegations in Count I of the First Amended Motions to Modify, and the trial court sustained the allegations that the children were in need of services "by clear, cogent and convincing evidence." The trial court found that reasonable efforts by Children's Division have been exercised to prevent removal of the children from the home and aid in the goal of reunification, however continued placement of the children in the home is contrary to their welfare. Further, following the permanency hearing, the trial court ordered that the Children's Division make reasonable efforts toward the permanency goal of termination of parental rights and adoption. This appeal follows.[6]

---

[6] Respondent argues Father's appeal should be dismissed because he abandoned his Motion for New Trial. The judgment of the trial court was issued on September 21, 2021, and Father filed a Motion for New Trial to Amend Findings Recommendations and Judgment on October 21, 2021. While Father's motion was pending, he filed a Notice of Appeal on November 1, 2021. By filing a Notice of Appeal before the trial court ruled on the Motion for New Trial, Respondent argues, Father abandoned the Motion for New Trial, which is required to

6

## Standard of Review

"We review juvenile adjudication proceedings under the standard applied in other court-tried civil cases and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Interest of Z.N.O. v. R.O.*, 566 S.W.3d 609, 615 (Mo. App. W.D. 2018); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "In reviewing the sufficiency of the evidence, this court views the facts presented in evidence and the reasonable inferences therefrom in the light most favorable to the trial court's judgment." *In Interest of R.A.*, 913 S.W.2d 142, 144 (Mo. App. W.D. 1996). We ignore evidence contrary to the trial court's ruling. *Interest of Z.N.O.*, 566 S.W.3d at 615.

"Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the [trial] court's judgment." *England v. England*, 454 S.W.3d 912, 917 (Mo. App. W.D. 2015). "[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." S.S.S. v. C.V.S., 529 S.W.3d 811, 815 (Mo. banc 2017). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in

---

preserve claims for appeal. However, "[I]n cases tried without a jury or with an advisory jury, neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review if the matter was previously presented to the trial court." Rule 78.07. Here, the issues presented in the Motion for New Trial to Amend Findings Recommendations and Judgment were already before the trial court; therefore, an after-trial motion was not necessary to preserve the matter for appellate review. Further, even if an after-trial motion were necessary, "In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purposes of appeal." Rule 81.05(b). Here, Father timely filed a Notice of Appeal, and "once such notice is timely filed, the appeal becomes effective." *L.J.B. v. L.W.B.*, 908 S.W.2d 349, 351 (Mo. banc 1995). Therefore, we reject Respondent's argument that Father's appeal should be dismissed on this basis.

weighing the evidence, and an appellate court will only reverse in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.* at 816.

### *Point one; reasonable efforts*

Father argues the trial court erred in finding that the Children's Division made reasonable efforts to aid in the goal of reunification. Specifically, Father argues, in a single point relied on, that the trial court's findings are not supported by substantial evidence and are against the weight of the evidence. As an initial matter, Father's point relied on is multifarious. "This Court has repeatedly explained that an 'against-the-weight-of-the-evidence' challenge is not the same as a 'not-supported-by-substantial-evidence' challenge." *Fastnacht v. Ge*, 488 S.W.3d 178, 183 (Mo. App. W.D. 2016). "Rather, they are 'separate and distinct challenges[]'" that should have been separated into two distinct points relied on. *Id.* at 184 (quoting *Hopkins v. Hopkins*, 449 S.W.3d 793, 802 (Mo. App. W.D. 2014)). "Multiple claims of error in one point relied on render the point 'multifarious' and violate Rule 84.04."[7] *Id.* "Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal." *Hopkins*, 449 S.W.3d at 802.

Further, a party raising an against the weight of the evidence challenge must follow the four-step analytical sequence for raising such a challenge as set forth in *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010):

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

---

[7] All Rule references are to Missouri Court Rules (2021) unless otherwise indicated.

(2) identify all the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Meseberg v. Meseberg*, 580 S.W.3d 59, 66 (Mo. App. W.D. 2019).

Father fails to follow this required analytical sequence in raising his against-the-weight-of-the-evidence challenge, and therefore we decline to review this challenge on appeal. We will *ex gratia* exercise our discretion to address his challenge that the judgment was not supported by substantial evidence.

Turning to the merits of the appeal, Father's argument that the judgment of the trial court was not supported by substantial evidence lacks merit. "In juvenile court proceedings regarding the removal of a child from his or her home, the court's order shall include a determination of whether the children's division has made reasonable efforts to prevent or eliminate the need for removal of the child and, after removal, to make it possible for the child to return home." Section 211.183.1. "'Reasonable efforts' means the exercise of reasonable diligence and care by the division to utilize all available services related to meeting the needs of the juvenile and the family. In determining reasonable efforts to be made and in making such reasonable efforts, the child's present and ongoing health and safety shall be the paramount consideration." Section 211.183.2. "In support of its determination of whether reasonable efforts have been made, the court shall enter findings,

9

including a brief description of what preventive or reunification efforts were made and why further efforts could or could not have prevented or shortened the separation of the family." Section 211.183.3.

The trial court found:

[R]easonable efforts by Children's Division have been exercised to prevent removal of the children from the home and aid in the goal of reunification. However, based upon the evidence adduced and the Court taking judicial notice of its own files in theses [sic] causes including all Children's Division Social Files and accompanying attachments, continued placement of the children in the home is contrary to their welfare. Conditions of a potentially harmful nature continue to exist in the mother's and father's home environments as neither parent has engaged in authorized services.

The trial court made the following reasonable efforts findings:

Children's Division has made reasonable efforts toward the permanency goal of reunification by authorizing/referring and/or providing the following…For the father: Paternity testing; Absent Parent Search; a Psychological Evaluation with Parenting Assessment; Individual Therapy; Random Urinalysis; Hair Test; Parent Aide Services for purposes of visitation and parent education; referral to a Substance Abuse Assessment; referral to Drug treatment; referral to Domestic Violence counseling; Family Treatment Court Services and case management.

We find the trial court's judgment is supported by sufficient evidence to support a finding of reasonable efforts. Here, the trial court heard testimony from Children's Division case supervisor, Laura Green. Green testified that Father had been provided services since the original case against Mother was opened. These services included drug testing, information on treatment facilities, paternity testing, and parent aide services. The trial court also took judicial notice of the case file, which included periodic status reports from the Family Drug Court. These status reports reflect that the court ordered Father to attend

10

substance abuse treatment, attend individual therapy, and submit to UA testing, all of which he failed to avail himself.

This case is similar to *In Interest of R.A.*, in which we affirmed the trial court's findings that reasonable efforts were made to aid in reunification. 913 S.W.2d at 145. There, we held that the provision of "aftercare services, psychological evaluations for purposes of identifying counseling needs, homemaker services and a bonding assessment[]" was "sufficient to establish reasonable efforts." *Id.* We further noted, "The parents neglected to take advantage of the services resulting in a failure to adjust their circumstances or conduct to provide a proper home. It is the function of [Children's Division] to provide services. However, it is not their responsibility to compel the parents to accept them." *Id.* Here, too, the trial court considered ample evidence that Father neglected to take advantage of the services offered to him. Father missed several scheduled appointments to establish paternity in November 2020, and did not establish paternity until March of 2021. Father also failed to participate in UA testing and hair testing, which Green stated was necessary "for Children's Division to have felt comfortable reunifying him with children." Father expressed frustration with having to conduct drug testing and stated to a case supervisor that he did not understand the purpose of drug testing or treatment services. Father had several parent aides appointed to him who withdrew services due to lack of or inconsistent participation. And Father was difficult to communicate with, including being "one-sided" on telephone calls regarding his requirement to attend mandatory services.

Father argues that the trial court's judgment is not supported by substantial evidence because, although Green testified that Children's Division began making services available

11

to Father from the beginning of Mother's case in August 2020, case status reports show that many of the services, including drug testing and treatment, psychological evaluations, and case management, were not ordered by the court until Father was added as a party in the Motions to Modify in April 2021. For example, the first case status report showing authorization for drug testing occurred on June 18, 2021. Because Father held himself out to be the father of the Children from the very beginning, Father argues, Children's Division failed to make reasonable efforts toward reunification from the earliest possible opportunity. However, this analysis of the record violates our standard of review, which requires us to view all evidence in the light most favorable to the judgment. When asked on cross-examination if services were withheld from Father until June 2021, Green testified, "That is not correct. The services for him have been authorized since the case opened." Because we view evidence in the light most favorable to the judgment, the record reflects that services were available to Father from the outset of the case, and he failed to avail himself of those services.

The trial court found Children's Division made numerous services available to Father to prevent removal of the children from the home and aid in the goal of reunification, and those findings are supported by the record. Father exhibited a pattern of failing to take advantage of those services and even expressed frustration with having to attend to them at all. Therefore, the trial court did not err in finding Children's Division made reasonable efforts to prevent removal of the children from the home and aid in the goal of reunification.

Point denied.

*Point two; permanency plan*

12

Father argues the trial court erred in concluding that the Children's Division shall now be ordered to make reasonable efforts toward the permanency goal of termination of parental rights and adoption because the court's finding was not supported by the evidence, and the findings related to permanency do not meet the requirements of section 211.183.3, which is a misapplication of the law.

Father argues we have authority to review the permanency plan on appeal under section 211.261.1, which provides, "An appeal shall be allowed to a parent from any final judgment, order or decree made under the provisions of this chapter which adversely affects him." Because the permanency plan has changed from reunification to termination of parental rights and adoption, Father argues, the permanency plan is reviewable. However, permanency hearings are not governed by Chapter 211 and therefore do not fall under the appealability criteria afforded by section 211.261.1. Rather, permanency plans are governed by section 210.720, which provides:

> The court shall review the report and shall hold a permanency hearing within twelve months of initial placement and at least annually thereafter. The permanency hearing shall be for the purpose of determining in accordance with the best interests of the child a permanent plan for the placement of the child, including whether or not the child should be continued in foster care or whether the child should be returned to a parent, guardian or relative, or whether or not proceedings should be instituted by either the juvenile officer or the division to terminate parental rights and legally free such child for adoption.

In *In re L.E.C.*, 94 S.W.3d 420, 425 (Mo. App. W.D. 2003), we held permanency plans are not reviewable on appeal. There, we stated, "[Section 211.261] limits itself to judgments, orders, and decrees made under Chapter 211. [Appellant] is appealing an order under [section] 210.720 . . . which, obviously, is not contained in Chapter 211." *In re*

*L.E.C.*, 94 S.W.3d at 425. This Court further held, "Allowing appeals from [section] 210.720 orders would cause inefficiency and lengthen the time needed to address the ultimate issue of parental rights termination." *Id.* In 2016, this Court was asked to reconsider *In re L.E.C.* "in a good faith attempt to change the law" related to appealability of permanency hearings. *In Interest of S.R.R.*, 489 S.W.3d 926, 927 (Mo. App. W.D. 2016). We reaffirmed *In re L.E.C.* and noted that permanency hearings, unlike termination of parental rights hearings, are subject to change or modification by the circuit court throughout the process. *Id.* at 928. "The evidence would likely never be sufficient during a permanency hearing to justify termination of parental rights, which occurs, if at all, following hearings conducted under sections 211.447-211.490." *Id.* at 928-29. Recognizing our obligation to adhere to statutory provisions, we noted, "Until the Legislature changes the goal of a permanency hearing or the factors the juvenile court is to consider in establishing a permanency plan that focuses on adoption rather than reunification, Chapter 211 termination criteria cannot provide the foundation for appellate review." *Id.* at 930.

Here, although the adjudication and disposition hearings, which *are* appealable under Chapter 211, immediately preceded the permanency hearing, the evidentiary requirements of the permanency hearing still fall within section 210.720. Therefore, absent a "statutory provision expressly granting the right to appeal from a [section] 210.710 order," *In re L.E.C.*, 94 S.W.3d at 425, we lack authority to review the trial court's findings as to permanency. Accordingly, point two is dismissed.

## Conclusion

For the above stated reasons, the judgment of the trial court is affirmed as to its findings that Children's Division exercised reasonable efforts to aid in reunification. We dismiss the appeal as to the trial court's change in the permanency plan.

_____
Gary D. Witt, Judge

All concur